LA COSETTE HENDREN et al., Trustees, Appellants,
v. FREDERICK W. NEEPER et al.

Division Two, July 5, 1919.

CORPORATION: Sale of Properties: Annihilation: Injunction.  A cor-
poration organized for the express purpose of buying and selling
real estate will not be destroyed by a sale of a large tract of land
belonging to it; and an injunction suit to enjoin the sale, brought
by a minority of the directors against the majority, who in regu-
lar meeting assembled have authorized the sale, cannot be main-
tained on the ground that such sale will annihilate the corporation.

Appeal from Hannibal Court of Common Pleas.—*Hon.
William T. Ragland,* Judge.

AFFIRMED. ·

*F. L. Schofield* for appellants.

(1)   Although the powers of the corporation as
they are set out in the articles of agreement are broad
enough to include the buying and selling and dealing
in real estate generally, yet the incorporators, neither
at the time of entering into the articles of agreement
nor since, ever contemplated or purposed the exercise of
these broader powers.   (2)   The intentions or things
purposed by the corporation itself, if such intentions
and purposes are to be considered apart from the wish
and will of those who have constituently composed
it, must be gathered from the business to which it has
always confined itself.   (3)   Whatever the real and ac-
tual ultimate intentions and purposes, whether of the
incorporators or of the corporation itself, may have
been, these ultimate intentions and purposes, conceding
that they have all the time existed, have always reposed
in the corporate body itself, and have never been dele-
gated or committed to its board of directors; and un-
til so designated and committed by antecedent action of

the stockholders, the directors possess no power or authority in the premises. (4) Notwithstanding its corporate powers extended to the buying and selling and dealing in real estate generally, it has never exercised such powers. It has never bought or sold an acre of land. Its corporate purposes, corporate efforts, corporate enterprise and practically sole and only corporate business, from the time of its organization down to the time of the commencement of this suit, have been confined to its primary purpose of owning, farming and improving the single body of lands acquired by it in the very processes of its organization. For the corporation to now go forward in the exercise of its ulterior powers by selling off the entire body of these lands and, with the proceeds, engaging in the business of buying and selling and dealing in real estate generally "at any place within the United States of America," would be a radical and complete change in its business and affairs, and it belongs to the corporate body alone, through the proper action of its members and stockholders, to determine whether or not it will make so vital a change. 2 Cook on Corp. sec. 670; Morawetz on Corp., secs. 238, 239, 240; Railway Co. v. Allerton, 18 Wal. 233; Buford v. K. N. L. Packet Co., 3 Mo. App. 166; 7 Am. & Eng. Ency. Law, p. 734, 735; 26 Am. & Eng. Ency. Law, p. 965; Hunt v. Am. Grocery Co., 81 Fed. 532; Metcalf v. Am. School Furn. Co., 122 Fed. 115; City of St. L. v. St. L. Gaslight Co., 70 Mo. 98; Field v. Roanoke Inv. Co., 123 Mo. 603; Gill v. Balis, 72 Mo. 424, 433; Cummings v. Parker, 250 Mo. 441.

*Eby & Hulse* and *F. W. Neeper* for respondents.

(1) If the charter of a corporation expressly authorized a lease or sale of the corporate property, such a lease or sale may be made by a majority of the directors in meeting assembled, and the minority are bound thereby. It is immaterial what the terms of the lease may be, or whether advantageous or disadvantageous

to the stockholders. The dissenting minority have no remedy unless fraud can be shown. 2 Cook on Stock (3 Ed.), sec. 898. (2) At common law the directors have powers co-extensive with those of the corporation, and have not a mere delegated authority as common agents; and in the absence of restrictions in the charter or by-laws, directors have all the authority of the corporation itself in the conduct of its ordinary business. Generally, whatever directors do, within the scope and powers of the corporation, the corporation does. 1 Beach on Private Corporations, sec. 227; Conyngton on Corporate Management, p. 23, sec. 31; Tanner v. Railway Co., 180 Mo. 17; City of St. Louis v. St. Louis Gaslight Co., 70 Mo. 98.

MOZLEY, C.—Injunction by the minority of the board of directors of the Hannibal, Missouri, Land Company against the majority of said board, seeking to restrain said majority from selling about twenty-eight hundred acres of land owned by the Hannibal, Missouri, Land Company, a corporation.

The said Land Company was duly organized as a corporation on or about the 9th day of June, 1904, under Article 7, Chapter 12, Revised Statutes 1899. The land involved was formerly owned by William A. Munger and his brother, Lyman P. Munger, and is situated in Marion County, Missouri. The two Mungers and Lucy A. Munger, the wife of Lyman P. Munger, formed the incorporation. William A. Munger had five hundred shares, his brother, Lyman P. Munger, had four hundred and ninety-nine shares, and Lucy A. Munger, one share, all of the par value of one hundred dollars each. Upon the organization of said corporation, said William A. Munger, said Lyman P. Munger and his wife, Lucy A. Munger, deeded the whole of the lands referred to, to the corporation, the Hannibal, Missouri, Land Company, and received therefor certificates of stock in proportion to the shares they had subscribed. In the articles of incorporation it was provided as fol-

lows: "The purposes for which this incorporation is formed are to buy and sell real estate, both farm and city property, at any place within the United States of America; and to own and hold, operate and control such real estate and to exercise such acts of ownership and control over the same as may be exercised over the ownership and control of real estate by a private citizen of the State of Missouri."

Lyman P. Munger departed this life on or about the 28th day of February, 1906, leaving a will in which he bequeathed all of his said capital stock in said corporation to his wife, Lucy A. Munger. On the —— day of May, 1911, the said William A. Munger departed this life, leaving a will in which plaintiffs, La Cosette Hendren and Thomas P. Head, were named and appointed executors, and bequeathing his said five hundred shares of the capital stock in said corporation to the said executors as trustees, with power of ultimate sale and distribution to certain named parties, who were to be the beneficiaries of the said William A. Munger. Thereafter the said Lucy A. Munger transferred one share of said stock to the defendant Frederick W. Neeper, and afterwards died, leaving a will duly proved and admitted to probate, whereby she bequeathed all of her remaining capital stock, namely, four hundred and ninety-nine shares, to the defendant Leigh A. Neeper. In addition to the lands above referred to, the Mungers owned about 1650 acres each in Illinois, and it, after the organization of the corporation, was handled through the corporation. The corporation owns other property beside that mentioned, and had about $5000 in cash. It is conceded in the record that the defendants constituted a majority of the board of directors of said corporation.

At the regular annual meeting of the board of directors of said company, one William A. Rinehart had submitted a proposition in writing to buy said 2800 acres referred to, and pay therefor to said company the sum of $124,500. All of the members of said board were present at said regular meeting, and the proposi-

tion of Rinehart was duly laid before the board by defendant Frederick W. Neeper, one of said directors and the then president of said corporation. The matter was passed over from time to time until the 14th day of March, when said proposition was accepted by a majority vote of said board of directors, by resolution duly passed, and said board contracted to sell said lands for $124,500 as follows: $20,000 cash, upon the execution of the deed, and the further sum of $104,500 in three annual installments, payable respectively in one, two and three years from date of said sale, with interest on each of said deferred payments at five and one-half per cent. per annum from the date of sale, and the said Rinehart was to convey, by trust deed, to the corporation, said lands, to secure the payment of the balance on the purchase price of same. The plaintiffs, as trustees, at this juncture, instituted this action to enjoin the consummation of said sale. On a trial in the Hannibal Court of Common Pleas the chancellor found the issues for defendants, denied plaintiffs injunctive relief or any relief, and dismissed the bill. From that decree, plaintiffs appealed to the Saint Louis Court of Appeals, which court, because the amount involved is in excess of its jurisdiction, certified the cause to this court.

Appellants assign error as follows:

(1) Under the law and all the evidence the finding and decree should have been for plaintiffs, awarding the relief prayed. The court erred in finding for defendants and in rendering a decree dismissing plaintiffs' bill.

(2) The court erred in overruling plaintiffs' motion for a rehearing and a new trial and their motion in arrest of judgment.

Under these assignments the contention is made by appellants that if the sale of the land in controversy is consummated, it will result in annihilating the corpora-

Destroying Corporation.

tion and that this cannot be done without the consent of all the stockholders. We cannot subscribe to that view. To do so

9—279 Mo.

would be to lose sight of the purposes for which the corporation was formed. Its charter powers expressly authorizes it to buy and sell real estate—in fact recites that the corporation was formed for that purpose. The sale of the land in question has no reference to the destruction of the corporation, it is merely carrying out the specific charter power the corporation possesses. Nor is there anything in the record that discloses any attempt or desire, in making this sale, upon the part of the majority of the directors, to interfere with the integrity of the corporation.

Cook, in his admirable treatise on corporations, states the following as the law: "The law seems to be clear that all corporate contracts are to be made by the directors. This includes original contracts as well as modifications of them. If a contract is within the express or implied powers of the corporation, then the directors need not consult the stockholders nor follow their wishes, even though the latter constitute a majority or a minority, and though these stockholders object in meeting assembled or individually in the courts." [Vol. 3, par. 709, p. 2423.] Further in the same volume, paragraph 712, page 2435, it is said: "All contracts of a corporation are to be made by or under the direction of its board of directors. And in all cases the board of directors and not the stockholders, nor the president, secretary, treasurer, or other agent, is the original and supreme power in corporation to make corporate contracts. The stockholders, indeed, have very few functions. The board of directors have the widest of powers. All of the various acts and contracts which a corporation may enter into are entered into by and through the board of directors. The board of directors make or authorize the making of the notes, bills, mortgages, sales, deeds, liens, and contracts generally of the corporation."

We think there is no doubt that the majority of the board of directors were acting expressly with the charter powers of the corporation in making said contract of

sale to Rinehart, and that said sale is legal and the corporation bound thereby.

Entertaining these views, it results that the decree of the lower court will be affirmed. It is so ordered. *White, C.*, concurs; *Railey, C.*, absent.

PER CURIAM:—The foregoing opinion of MOZLEY, C., is adopted as the opinion of the court. All of the judges concur.