## LEON L. HILL v. PAGE & HILL COMPANY AND OTHERS.[1]

No. 30,629.

August 14, 1936.

*Stinchfield, Mackall, Crounse, McNally & Moore* and *Floyd E. Nelson,* for appellant.

*Kingman, Cross, Morley, Cant & Taylor,* for respondents.

LORING, JUSTICE.

In April, 1903, some members of the Page family and of the Hill family formed a Minnesota corporation under the name of Page & Hill Company, to deal in timber products and in real and personal property. In 1928 the plaintiff, who then owned 22 per cent of the corporate stock and who was secretary of the corporation, resigned his office in order to associate himself with the W. B. Foshay Company. He continued to be a director of the Page & Hill Company until January, 1931. From 1928 for a considerable period plaintiff engaged in negotiations with the Pages to sell to them his stock in the corporation.

[1]Reported in 268 N. W. 705, 927.

By the terms of the corporate charter it expired April 13, 1933. In 1929 some of the stockholders of the Page & Hill Company organized a Delaware corporation under the same name, which, in 1933, was licensed to do business in the state of Minnesota. Immediately prior to the expiration of the corporate charter of the Minnesota corporation, the board of directors of that company, with the consent and authorization of its stockholders other than plaintiff, sold to the Delaware corporation all of the assets of the Minnesota corporation in consideration of all of the stock of the Delaware corporation and its assumption of all of the liabilities of the Minnesota corporation. The plaintiff had refused to consent to the renewal of the charter of the Minnesota corporation and protested against the sale of the Minnesota company's assets to the Delaware company. The stock of the Delaware corporation was, at the request of the Minnesota corporation, directly issued to the stockholders of the Minnesota corporation in proportion to their holdings therein, except that plaintiff refused to accept his proportionate share of the stock in the Delaware corporation.

June 27, 1933, the plaintiff brought this suit in which he sought to have the transfer of assets declared invalid and to compel the Delaware corporation to transfer them back to the Minnesota corporation, which he sought to have liquidated and dissolved in a receivership.

The trial court found in favor of the defendants and entered judgment accordingly. It held that the transfer was valid and binding upon the Minnesota corporation and all of its stockholders, including plaintiff, and the case comes here upon appeal from that judgment.

1. Plaintiff asserts that the Minnesota corporation did not have the power to transfer its assets to, or to accept the stock of, the Delaware corporation; and he further asserts that even if the Minnesota corporation had such power, the transfer was invalid as to the plaintiff because it compelled him either to accept stock of the Delaware corporation or to retain his stock in a corporation which he asserts had no assets; and he further claims that he is entitled to the appointment of a receiver for the Minnesota corporation.

The Minnesota corporation was organized under G. S. 1894, c. 34, Title 2, subd. (1), relating to corporations for pecuniary profit. "Every such corporation has power to acquire, hold and transfer all such real and personal estate as is necessary or convenient for the purpose of conducting, carrying on, or disposing of the business of such corporation." G. S. 1894, § 2798.

It is the contention of plaintiff that against his protest no sale or transfer of all the assets of the Minnesota corporation could be made. He interprets the decisions of this court as having adopted the so-called "strict" rule that a going concern cannot make such sale or transfer against the protest of any stockholder, and he takes the position that no statute passed after the formation of the corporation and his acquisition of stock can constitutionally be applied to his rights.

The respondents contend that this court has not adopted the "strict" but the "liberal" rule, and that in their sound discretion, in good faith, the majority of the stockholders may authorize the corporate officers to sell and transfer all the assets of the corporation when it is "a business-like thing to do" and when no advantage is taken of minority interests.

In the case at bar there is no question of failure to perform an implied contract to carry out the corporate purposes. The corporate existence of the Minnesota company was about to expire. April 13, 1933, was one of the low points, if not the lowest point, of the depression in values throughout the United States. We take judicial notice that market prices were subnormal. The Minnesota corporation had been doing business at a loss for three years. Its bank loans aggregated $170,000, its inventories only $261,819.27. Obviously, liquidation by dissolution would have resulted in a heavy sacrifice. Yet this was what the plaintiff ostensibly desired. He did not want the corporate charter renewed, and he protested against the sale or transfer to the Delaware corporation.

Under such circumstances we see no need of determining whether the strict rule or the liberal rule applied in this state prior to the statutes which now control such sales or transfers. Usually the exigencies which lifted the strict rule were those which threatened

the financial structure of the corporation. Here we find the corporation confronted with the expiration of its charter, which entailed dissolution and forced liquidation at a time when the financial situation must have indicated great likelihood, if not absolute certainty, that actual values could not be realized on sales for cash. It might, by compliance with L. 1901, c. 207, have renewed its charter, but plaintiff opposed such a course. The alternative was a sale of all its assets for the stock of the purchasing corporation. We think the exigency justified the corporate action and took the case out of the rule applying to going concerns. The Minnesota corporation may have been a going concern, but the stop sign was set against it and it was compelled to come to a full stop on April 13, 1933. The inexorable passage of time placed a period to its activities on that day. It could not be said to be a going concern in the ordinary sense. Certainly the corporation was not prosperous, and it was confronted with liquidation at the nadir of the depression or a sale such as was made. No businessman in his senses, handling his own affairs, would have taken any other course than that which defendants took. It is difficult to conclude that plaintiff really desired what he assumed to.

2. Nor do we think that under the circumstances it was improper for the Minnesota corporation to take the stock of the Delaware company in payment for its property. This stock was taken for distribution to its stockholders insofar as it was acceptable to them. It was not the purpose to hold it as a corporate investment. If plaintiff did not accept his proportionate share of the stock it could be disposed of in proceedings for the dissolution of the Minnesota corporation, and he would in effect get the market value of his proportionate interest. Treadwell v. Salisbury Mfg. Co. 7 Gray, 393, 66 Am. D. 490. It was obviously for the best interests of all concerned that a sale for cash be not forced upon the corporation at a time when values were so much depressed. The rule that such sales should ordinarily be made for cash is not without exception, Geddes v. Anaconda C. M. Co. 254 U. S. 590, 41 S. Ct. 209, 65 L. ed. 425, and we think the circumstances here existing justified an exception. Treadwell v. Salisbury Mfg. Co. 7 Gray, 393; Metcalf v.

American S. F. Co. (C. C. A.) 122 F. 115, and cases cited. Quite apparently the whole transaction was carried out without any advantage to the other stockholders over the plaintiff. He was to be treated in good faith exactly as all others were treated.

We see no ground for reversing the trial court, and its judgment is therefore affirmed.

UPON APPLICATION FOR REARGUMENT.

On October 2, 1936, the following opinion was filed:

PER CURIAM.

Plaintiff in his petition for rehearing insists that the lower court should be reversed on the authority of Paterson v. Shattuck Arizona Copper Co. 186 Minn. 611, 244 N. W. 281. To us it appeared that the question actually decided in that case was so obviously different from that here presented that we did not discuss the case. Here the plaintiff was treated like other stockholders. There the plaintiffs were minority stockholders in the Shattuck company (a prosperous going concern confronted by no exigency), who, the trial court found, had not been fairly treated in the merger with the Denn company in 1925. This court there said, *obiter,* that the Shattuck company might have sold its assets because it was a businesslike thing to do, but that it did not in fact sell. There the trial court granted a receivership but was reversed by this court on conditions. In the case at bar the relief granted by this court in the Paterson case was not sought either in the complaint or, what is perhaps more important in this kind of a case, in the motion for amended findings and conclusions. Here plaintiff was not seeking appraisal and sale to defendants or any of them. He sought restoration of the property to the Minnesota corporation and the dissolution thereof through a receivership. This, we hold, he may not have.

The petition is denied.