## JEROME DWORSKY v. THE BUZZA COMPANY AND OTHERS.[1]

May 28, 1943.

No. 33,406.

*Louis Sachs* and *Irving Juster,* for appellant.

*Joseph H. Colman, Henry Halladay,* and *Fletcher, Dorsey, Barker, Colman & Barber,* for respondents Harry C. Piper, George F. Piper, Piper, Jaffray & Hopwood, and The Buzza Company.

*Shearer, Byard & Trogner,* for respondent Charles L. Pillsbury.

*L. E. Melvin,* for respondent Clara Louise Dickson, executrix, substituted for George F. Dickson, deceased.

HENRY M. GALLAGHER, CHIEF JUSTICE.

This is a suit for rescission of a transaction in which plaintiff

[1]Reported in 9 N. W. (2d) 767.

parted with certain stock certificates of Buzza Clark, Inc. and received certain certificates of The Buzza Company. He seeks to recover the value of his Buzza Clark, Inc. shares on the theory that defendants are unable to restore them to him. The action is predicated upon the claim that the transaction was in violation of the blue sky law and was induced by defendants' fraud. The trial court directed a verdict for defendants, and the appeal is from the judgment entered upon the verdict.

In 1928 plaintiff bought 59 shares of the first preferred stock of Buzza Clark, Inc., a Delaware corporation, engaged in the greeting card business and having its principal office in Minneapolis. The stock had a par value of $100 per share and was entitled to a seven percent cumulative dividend and to exclusive voting rights in the event of default in the payment of dividends. At the time of the transaction here involved, Buzza Clark, Inc. had outstanding 11,195 shares of preferred stock and 56,000 of common, a substantial interest of both being owned by officers and employes of Lane, Piper & Jaffray, Inc., one of the underwriters in the sale of its stock to the public.

It appears that the business of the company began to decline about 1928 or 1929 and that E. E. Blackley, vice president of Lane, Piper & Jaffray, Inc., was placed in charge of its affairs. The October 1929 dividend was omitted, and no dividends were paid thereafter. In October 1930 a competitor began to buy stock in the corporation. To prevent him from gaining control of the company and from forcing its liquidation, defendants Harry C. Piper, George F. Dickson, and Charles L. Pillsbury, stockholders of Buzza Clark, Inc., organized a voting trust agreement under which the holders of a majority of the preferred stock deposited their stock with them for voting purposes. Because of default in the payment of dividends, the only stock entitled to vote at this time was the preferred. The voting trust agreement was, by its own terms, to terminate December 1, 1932.

In November 1932 Harry C. Piper formulated a plan for reorganization of Buzza Clark, Inc., which will hereinafter be referred

to as the old company. A notice embodying all the details of the plan was mailed to stockholders November 12. Plaintiff received such a notice, but claims that he did not read it. The plan for reorganization was submitted to a special meeting of all the stockholders held, pursuant to notice, on November 23, and a quorum, representing holders of both common and preferred stock, was present and participated. Plaintiff did not attend or participate either in person or by proxy.

The reorganization plan was read to the stockholders at the meeting. It proposed in substance: A new corporation was to be organized which would take over all the old company's assets and liabilities in consideration for 11,195 shares of preferred stock and 44,780 shares of Class A common stock in the new company. As a further consideration the new company was to offer to common stockholders of the old company, subject to the approval of the state department of commerce, one share of its common for two shares of the old company's common stock. The old company was then to distribute to its preferred stockholders pro rata the 11,195 shares of preferred and 44,780 shares of Class A stock so that the holder of one preferred share of old company stock would receive one share of preferred and four shares of Class A stock in the new company. The plan disclosed that the net worth of the old company was substantially less than the liquidating value of its preferred stock and that the preferred and Class A stock of the new company to be received and distributed by the old company would constitute the only asset of the old company. Nothing was to be distributed by the old company to its common stockholders. The old company was to close its business on November 30, 1932, and thereafter the business was to be run at the expense and for the benefit of the new company. It further proposed that upon acceptance of the plan the old company agree to liquidate its affairs by distribution of the new company stock as soon as practicable and to cease all its activities. The remaining 27,000 shares of common stock were to be issued to E. E. Blackley, general manager of the old company, to insure his continued management of the

new company's business. The plan provided that its adoption would require (1) the determination of the old company's directors that it was expedient and for the best interest of the old company; (2) the affirmative vote of the holders of 60 percent of the preferred stock and a majority of the common stock of the old company given at a stockholders meeting called for that purpose; and (3) the approval of the board of directors of the new company.

Reasons for adopting the plan were discussed at the stockholders meeting, and it was then submitted to vote. More than 60 percent of the preferred stock and a majority of the common stock was voted in favor of adoption of the plan.

Thereafter The Buzza Company, herein referred to as the new company, was organized. It adopted the plan and issued all its preferred and Class A stock in the name of, and to, the old company in exchange for all its assets. This stock was held by the First Minneapolis Trust Company (now First National Bank) as transfer agent, with instructions "to transfer from the shares of stock represented by these certificates, or any other certificates which may be issued from time to time representing the balance of said stock holdings, to such of the Preferred stockholders of Buzza Clark, Inc. as shall deliver certificates for such Preferred Stock to you for surrender to and cancellation by Buzza Clark, Inc., and in liquidation of such Preferred Stock." The old company's liquidation was then begun, and the shares of preferred and Class A stock were distributed among the old company's preferred stockholders pro rata by the transfer agent.

The new company also issued common stock certificates directly to the common stockholders of the old company and additional stock to the management. This was done pursuant to the plan and with the approval of the department of commerce. The new company common stock issued to the management consisted of 27,000 shares issued to E. E. Blackley, general manager of the old company, 22,000 of which were subject to reacquisition by the company upon the "death, resignation, or discharge of the recipient within five years." It was in the nature of a bonus and was issued for the

purpose of insuring Blackley's continued interest in, and management of, the new company. Application was made to the department of commerce for an order registering the issue of common stock, and such order of registration was granted. No such application was made in connection with the issuance by the new company of its preferred and Class A stock.

Concerning the meeting at which the reorganization plan was adopted, plaintiff testified that he received advance notice of the meeting; that he did not attend; that he knew he had the right to vote on the proposed plan and also that all other preferred stockholders had similar voting rights; that he made no inquiries or complaints to any of the defendants and did not believe anything wrong had been done; and that it was upon his son's suggestion several years later "that there was something wrong with the stock" that he commenced this lawsuit. In November 1934 he presented his certificates representing his stock ownership in the old company to the transfer agent and received certificates of the new company representing his pro rata interest therein. At about the same time he received and accepted $236 in cash as dividend payments which had theretofore been declared by the new company. In 1936 the new company redeemed 30 of his preferred shares and paid him therefor $1,500.

■ Plaintiff contends that the distribution of the new company's preferred and Class A stock to the certificate holders of old company preferred stock constituted a sale of securities within the meaning of the blue sky law and that it should have been registered with the department of commerce. Defendants claim, and their position was sustained by the trial court, that the transaction did not constitute a sale of securities and that there was no occasion for registry of the stock with the department of commerce. Minn. St. 1941, § 80.01, subd. 3 (Mason St. 1941 Supp. § 3996-1[2]), defines the words "sale," "sell," and "sold," as used in the blue sky law; and § 80.06 (§ 3996-3) expressly exempts certain transactions from operation of the stock registration act. Subdivision (4) thereof provides that the law shall be inapplicable to:

"The distribution by a corporation of its or other securities to its own security holders as a stock dividend or as a dividend from earnings or surplus or as a liquidating distribution."

Defendants' position is that the transaction here involved was a distribution in the nature of a "liquidating distribution" within the express exemption of § 80.06(4).

Under the reorganization plan it was necessary for a holder of old company preferred stock to present his certificates to the transfer agent, whereupon he was given certificates representing stock ownership in the new company. No consideration was paid. The assets of the two companies were identical. The old company preferred stockholder retained his same pro rata interest in those assets. The old company went out of business. Its only assets consisted of stock in the new company. All that remained for it to do was to distribute that stock among its preferred shareholders. Authority to carry out the details of that distribution was delegated to the bank, the transfer agent. For all purposes the old company's existence ceased. That a corporation has the power to transfer its assets to, and accept the stock of, a new corporation is clear. Hill v. Page & Hill Co. 198 Minn. 30, 268 N. W. 705, 927. Section 65 of the General Corporation Law of Delaware (Rev. Code Delaware, 1935, § 2097), under which both corporations were organized, expressly so provides. That is what the old company did. And it accepted the new company's stock for the sole purpose of distributing it among its preferred shareholders. It did not intend to continue its existence as a holding company. It authorized its transfer agent to handle all the details of distributing new certificates to its preferred shareholders. Such distribution amounted to the complete liquidation of the old company's assets and the termination of all its affairs. Clearly, the transaction is within the exemption of § 80.06(4), *supra*. The trial court's determination to that effect is correct.

■ Plaintiff asks "rescissionary relief" on the ground of fraud. There is no evidence of unfairness, deceit, or breach of a fiduciary

relationship upon which to predicate such a claim.    Plaintiff had full notice of the whole plan.   We quote from his testimony:

"Q.   Mr. Dworsky, did you ever tell either one of the Pipers, or Mr. Pillsbury or Mr. Dickson that they had defrauded you?

"A.   I never did.

"Q.   You never did?

"A.   No.

"Q.   Do you claim now that they have defrauded you?

"A.   I don't think so; I don't think they did."

The reasons for reorganizing, the plan as adopted and carried into effect, and the results attained under it demonstrate open and aboveboard business dealing and sound business judgment.   There is not the slightest evidence of fraud in the whole record, and the trial court very properly directed a verdict for all the defendants.

Affirmed.