HAROLD L. WARNER v. E. C. WARNER COMPANY AND ANOTHER.[1]

August 6, 1948.

No. 34,695.

---

566

*R. H. Fryberger* and *M. R. Keith,* for appellant.

*Dorsey, Colman, Barker, Scott & Barber* and *Morley, Cant, Taylor & Haverstock,* for respondents.

LORING, CHIEF JUSTICE.

Harold L. Warner, a director and stockholder in the E. C. Warner Company, a holding company, brought this representative suit in 1946 in behalf of the corporation against A. E. Wilson, also a director and its president and treasurer. It is conceded that the officers of the corporation would not bring the suit, so plaintiff joined the corporation as defendant. The suit sought recovery for waste and depletion of corporate assets caused by Wilson's alleged wrongful and improvident acts in the sale in March 1942 of 10,050 shares of the stock of the First Bank Stock Corporation belonging to the company. The case comes here on appeal from an order overruling demurrers to two of the four defenses set up by defendants to the first cause of action alleged in the complaint, the questions presented by the demurrers being certified as important and doubtful. (The second cause of action is not herein involved. Hereinafter, when we refer to the complaint it is in reference to the first cause of action.)

Ellsworth C. Warner in his lifetime was the owner of 270 shares of the capital stock of defendant company, a Minnesota corporation (hereinafter called the Warner company), and he was president and treasurer thereof. Harold L. Warner, his son, the plaintiff herein, owned one share and, as trustee for his wife, Katherine, held 20 shares. The Oldsworth Trading Company, Ltd., of Canada, a Warner-controlled corporation, owned 157 shares. M. A. Warner owned one share, and 20 shares were held in trust for his children. Ellsworth C. Warner, together with one George A. Doney, his secretary, who owned one share, and Harold L. Warner constituted the board of directors until Ellsworth C. Warner's death, when, under authority of the bylaws, the surviving two directors elected defendant A. E. Wilson to the board to succeed him. Wilson was chairman of the trust committee of the First National Bank of Minneapolis (formerly the First National Bank & Trust Company of Minneapolis) and a director of the First Bank Stock Corporation, which owned over

90 percent of the stock of the bank. He was also an officer of the Minneapolis Trust Company, an affiliate of the bank.

It is alleged in the complaint that Wilson was elected to the board of the Warner company by reason of false representations made to Harold that it was the wish and desire of his father that some officer of the Minneapolis Trust Company be named as his successor on the board and as president. It is also charged that it was falsely represented to Harold that it was his father's desire that the holding companies in which he was interested be liquidated "as soon as you have authority to do so and think it consistent."

Ellsworth C. Warner was at the time of his death on January 5, 1942, a resident of Florida. His will was there admitted to probate January 9, 1942. Two Florida banks were appointed executors of the will, which contained an instruction that they should exercise their powers "only in such manner as First National Bank and Trust Company of Minneapolis, as managing adviser shall in writing propose or direct." It is alleged in the complaint that the net assets of the corporate defendant were approximately five million dollars and that each share of its stock was worth approximately $10,000. From these allegations it may be assumed that the estate and inheritance taxes on the Warner estate would be very substantial.

March 13, 1942, at a specially called meeting of the board of directors of the Warner company, at which all directors (including this plaintiff) were present, the president (A. E. Wilson) was authorized to sell any securities belonging to the company "when in his judgment it is to the best interests of the company to do so." Among the securities specifically approved for sale were 10,050 shares, $10 par, of the First Bank Stock Corporation, "Approximate Market Value, 3-9-42, $109,293.75." A further resolution authorized the sale of these shares "at market or approximately at market: * * *."

Under this authority, a quantity of securities were sold, among them the First Bank Stock shares. These are the only shares the sale of which is here challenged. Fifty shares were sold on the Minneapolis-St. Paul Stock Exchange at $10.25 a share, the then

market price, which, less commission, netted $504.22. Ten thousand shares were sold at private sale at $10 a share, thereby saving brokerage charges. The total net receipts from both sales aggregated $100,504.22.

It is the contention of plaintiff that the "actual book value" of these shares was in excess of $16.26 a share and that at the time the board authorized the sale he knew nothing of such book value and that he relied on Wilson, who, he alleges, concealed such value from him. On this ground, he assails the transaction as "wrongful," "improvident," a "waste and depletion" of corporation assets, and a "breach of fiduciary duty" upon the part of Wilson, who, he asserts, dominated the action of the corporation in authorizing and effecting the sale.

The corporation and the defendant director set up four separate defenses to plaintiff's first cause of action. Plaintiff demurred to the second and fourth defenses, each of which realleged all the allegations of the first defense, which set up quite fully the heavy taxes to which the estate was subject, the specific bequests provided for in the will, and the history of the transaction resulting in the sale complained of. The second defense set up ratification of the sale by the stockholders of the corporation, with full knowledge of all facts with respect to the value of the stocks sold. The fourth defense pleaded the filing in and final approval by the probate court of Florida, which had jurisdiction of E. C. Warner's will, of an executors' account in which was reported the sale of the stock here involved. The demurrers were overruled. and the questions presented by them were certified to be important and doubtful. Plaintiff appeals.

1. In a representative or derivative suit of this character, the real controversy is between the corporation and the officer whose acts are complained of. The corporation is the beneficial plaintiff, even though it is made a defendant, while the stockholder bringing the action is merely a representative party so far as the corporation is concerned. 18 C. J. S., Corporations, § 567; Seitz v. Michel, 148 Minn. 80, 87, 181 N. W. 102, 105, 12 A. L. R. 1060; Singer v. Allied

Factors, Inc. 216 Minn. 443, 446, 13 N. W. (2d) 378, 380; Briggs v. Kennedy Mayonnaise Products, Inc. 209 Minn. 312, 317, 297 N. W. 342, 345-346. Consequently, plaintiff must plead facts which would justify recovery if the corporation itself were bringing suit.

2. Where a demurrer is interposed to an answer or to a defense set up in an answer, it searches the record and reaches the first defective pleading. This is due to the fact that in effect the demurrant "asks the court to give judgment in his favor on the record and hence the court will consider the whole record and give judgment accordingly." 2 Pirsig's Dunnell, Minn. Pl. § 1631, note 71, and cases cited, among them First Nat. Bank v. How, 28 Minn. 150, 153, 9 N. W. 626, 627. In fact, the demurrant stakes his own pleading on his demurrer to that of his opponent. He is not entitled to prevail on the demurrer if his own pleading is defective, even if his opponent's is also defective.

The judgment following the sustaining of a demurrer is at least theoretically upon the merits. If the complaint does not state a cause of action, the plaintiff should not be permitted to have judgment. The same rule applies on a motion to strike an answer. 2 Pirsig's Dunnell, Minn. Pl. § 1631, note 71, *supra*. The rule is applicable here because the answer does not in this case constitute a waiver of the defects in the complaint. See, Downer v. Union Land Co. 113 Minn. 410, 413, 129 N. W. 777, 778. The trial court's memorandum does not with certainty indicate that it considered the sufficiency of the complaint, but at least suggests an inference that it did.

If upon scrutiny of the complaint it does not state a cause of action, it is the duty of this court to sustain the trial court even if the answer does not set up a good defense. This is but an application of the doctrine that the trial court will be sustained whether or not it gave the right reason for a correct decision. In the case at bar, neither the corporation nor Wilson was a party or privy to the proceeding in the Florida court. Therefore, the fourth defense does not set up either estoppel by judgment or by verdict. Consequently, it becomes necessary to scrutinize the complaint to ascertain if, not-

withstanding our view as to the fourth defense, the trial court was right in overruling the demurrer. First Nat. Bank v. How, 28 Minn. 150, 153, 9 N. W. 626, 627.

3. The allegations in the complaint which attempt to charge Wilson with violation of his duties as a director and officer are contained in paragraphs XV and XVIII thereof, which read as follows:

"XV.

"That at the time said respective resolutions were adopted by the Board of Directors of the corporate defendant, the said defendant A. E. Wilson was a member of the Board of Directors of the said First Bank Stock Corporation, as aforesaid, was in a position to and did know or had ample means of acquiring information thereof that the actual and book value of the said stock, after depreciation and upon a fair and accepted accounting basis, was actually in excess of the sum of $16.26 per share and that said defendant, Wilson, at said time had ample means of acquiring knowledge of and knew or *should have known that the book value of said stock had been progressively increasing* since the year 1936 and that the actual book value of said stock thereof in the interim years was as follows:

| "1936 | $14.35 per share |
| 1937 | $14.76 per share |
| 1938 | $15.02 per share |
| 1939 | $15.24 per share |
| 1940 | $15.49 per share |

but that said Wilson failed and neglected to inform the other directors of said facts, as it was his duty to do; that the plaintiff, Harold L. Warner, did not know of said facts, had no means of acquiring information thereof and accepted and relied on the representations, statements and assertions of the said Wilson then and there made to said directors that it was necessary and to the best interests of the corporate defendant to sell said stock and that the same would have to be sold in order to liquidate said corporate defendant and close the estate of said E. C. Warner; and that it was to the best interests of the said corporate defendant to sell 10,000 shares of

said stock at $10.00 per share on the 31st day of March, 1942, and 50 shares thereof at market value of said date; that said Wilson then and there directed and dictated that said stock be sold in accordance therewith; that plaintiff further alleges that *since said 31st day of March, 1942, the said book value of said stock has progressively increased,* as the said Wilson then and there *had reasons to believe it would,* until the same is now of the actual worth and value of approximately $20.00 per share, but that said Wilson failed and neglected to inform and advise said directors of *said facts* as it was his duty so to do."

## "XVIII.

"That at the time of the voting of said transfer and the sale of said shares of stock the said Wilson knew that said sale was not necessary and was not for the best interests of the corporation, that the authorized *sale price was substantially less* than its *actual book value;* that by reason of his actions in the premises and his representations aforesaid, and by reason of his position of domination, control and dictation of the actions of said Board of Directors effected in the manner aforesaid he violated the position of trust then occupied by him as a director of the said corporation and caused said stock to be sold at the price aforesaid and *thereby caused a waste and depletion* of the assets of the corporate defendant, to the damage of said corporation in the sum of $62,908.78." (Italics supplied.)

There is also an allegation in paragraph XVII that the stock should have been transferred to the shareholders as a liquidating dividend upon the liquidation of the Warner company.

The allegation that Wilson knew facts which gave him reason to believe that the book value of the shares would increase is based entirely upon his alleged concealment of the then book value of the stock and its prewar increase in book value, upon which is postulated the contention that he should have then concluded that it would continue to increase. Such an allegation is but a conclusory allegation and is legally ineffective, unsupported as it is in the pleading by allegations of facts from which the pleader drew those conclu-

sions. Kalmanash v. Smith, 291 N. Y. 142, 153, 154, 51 N. E. (2d) 681, 686-687. "A complaint must state facts. General allegations of wrongdoing based upon undisclosed facts do not state a cause of action." Gerdes v. Reynolds, 281 N. Y. 180, 183, 22 N. E. (2d) 331, 333; see, also, Weinberger v. Quinn, 290 N. Y. 635, 637, 49 N. E. (2d) 131. As will be seen later, the alleged concealment of book value alone is wholly insufficient to sustain the suit.

4. In a derivative suit, absent clear allegations of facts constituting fraud or collusion, plaintiff must allege facts which show that the action attacked is so far opposed to the true interests of the corporation as to lead to the clear inference that no officer thus acting could have been influenced by any honest desire to secure such interests, but that he must have acted with intent to subserve some ulterior purpose, regardless of the consequences to his corporation and in a manner inconsistent with its interests. Gamble v. Queens County Water Co. 123 N. Y. 91, 99, 25 N. E. 201, 202, 6 L. R. A. 527. In Holmes v. Saint Joseph Lead Co. 84 Misc. 278, 282, 147 N. Y. S. 104, 106, Mr. Justice Cardozo, speaking for the court, said: "There must be either fraud or conduct so manifestly oppressive as to be equivalent to fraud."

The law does not justify recovery in representative suits for mere errors of judgment in handling corporate affairs.

Absent fraud, collusion, or like misconduct, the corporation, and consequently the plaintiff, would have no cause of action. The allegations against Wilson are not that his interests as a director of the bank and of the First Bank Stock Corporation conflicted with his interest as director and officer of the Warner company; or that he or any other director or officer or stockholder acted in collusion in perpetrating fraud on the corporation in selling the First Bank Stock Corporation stock. The allegations of fraud in connection with Wilson's appointment as a director are irrelevant to the issues between the corporation and Wilson.

Stripped of its irrelevant and ineffective allegations, the charge is that Wilson was guilty of mismanagement and improvidence in selling the stock at its market value instead of holding it for dis-

tribution as a liquidating dividend, and that, because the book value of the stock in question has risen, he should have foreseen that by making the sale the assets of the corporation would be depleted. There is no contention that he was interested in or profited by the sale of the stock or that he or any corporation of which he was a director or stockholder bought the stock or was in any way interested in or affected by the sale or profited thereby. Nor is it alleged that he or anyone conspired to depress the market for the bank stock shares. It is not alleged that a higher price than the market price was obtainable at that time. Since there is no charge of collusion, the elements of a cause of action for fraud are lacking unless the stock was sold at a price so grossly inadequate that the inference of fraud is justified. Such conclusion is not sustainable from the facts alleged.

In this connection, it is well to observe that when the directors were called upon to determine whether it was advisable to sell the First Bank Stock Corporation stock World War II was being waged. Our Pacific battle fleet had been destroyed at Pearl Harbor. The Japanese were prevailing on every front in the Pacific. The Battle of Midway had not yet been fought. There was serious apprehension of an invasion of our Pacific coast. The Japs, who never in history had lost a war, were boasting that they would dictate the terms of peace from the White House. What effect a war of unprecedented magnitude and cost would have upon banking in the Northwest was a matter of speculation. The possible consequences of these factors affecting stock values were obviously not foreseeable. It is not without significance that plaintiff did not challenge this transaction until time had answered the questions affecting the value of bank stock. He waited four years to start this suit. It is well settled that so long as officers of a corporation act honestly within the powers conferred upon them by the charter a court of equity will not interfere with their actions as such officers.

. "* * * The individual shareholders have no authority to dictate to the company's agents what policy they shall pursue, or to impair

that discretion which was conferred upon them by the charter." 1 Morawetz, Private Corporations (2 ed.) § 243.

"* * * In actions by stockholders, which assail the acts of their directors or trustees, courts will not interfere unless the powers have been illegally or unconscientiously executed, or unless it be made to appear that the acts were fraudulent or collusive and destructive of the rights of the stockholders. Mere errors of judgment are not sufficient as grounds for equity interference; for the powers of those entrusted with corporate management are largely discretionary." Leslie v. Lorillard, 110 N. Y. 519, 532, 18 N. E. 363, 365, 1 L. R. A. 465.

In Flynn v. Brooklyn City R. Co. 158 N. Y. 493, 507, 53 N. E. 520, 524, the court said:

"As a general rule courts have nothing to do with the internal management of business corporations. Whatever may lawfully be done by the directors or stockholders, acting through majorities prescribed by law, must of necessity be submitted to by the minority, for corporations can be conducted upon no other basis. All questions within the scope of the corporate powers which relate to the policy of administration, to the expediency of proposed measures, or to the consideration of contracts, *provided it is not so grossly inadequate as to be evidence of fraud,* are beyond the province of the courts. The minority directors or stockholders cannot come into court upon allegations of a *want of judgment* or *lack of efficiency* on the part of the majority and change the course of administration. Corporate elections furnish the only remedy for internal dissensions, as the majority must rule so long as it keeps within the powers conferred by the charter." (Italics supplied.)

Therefore, unless the allegations in the complaint, if true, would support a finding of dishonesty on the part of Wilson in connection with the disposition of the First Bank Stock Corporation stock, there was no case stated against him. Lacking justifiable inference of fraud, the complaint, fairly construed, charges merely a mistake of judgment on Wilson's part. It seems absurd to contend that in

March 1942, with the world situation what it was, even the best informed banker, no matter how much he knew of First Bank Stock Corporation, could predict with reasonable certainty the future of that stock. The contention answers itself. No doubt, this is the reason no facts as distinguished from general charges were alleged. Moreover, the allegation confines itself to "book value" and does not mention "true value," which is quite a different thing. No other element affecting the value of the stock at the time that it was sold is alleged. The whole case, as alleged, rests upon book value. Book value is only a minor element to be considered with other factors in arriving at the true value of the stock. Standing alone and without support from other factors, it is of little weight. In Diston v. Loucks, 62 N. Y. S. (2d) 138, 144, a representative suit, the court said:

"* * * book value of corporate stock is entitled to little, if any, weight in determining true value." (Citing numerous cases, among them Oxford Paper Co. v. United States, 52 F. [2d] 1008, 74 Ct. Cl. 295.)

Continuing, the court there said:

"* * * Many factors must be considered in determining true value, and earning power and ability to pay dividends are not the least of those factors. Thus there must be considered the record of the corporation and its prospects for the future, the investment value as determined by the rate of return, the selling price of stocks of like character, the appraised and sale value of assets, the market conditions, and any other relevant evidentiary facts and circumstances relating to the property which may reflect themselves in the worth of the stock. Matter of Fulton, 257 N. Y. 487, 494, 178 N. E. 766, 768, 79 A. L. R. 608; Cleary v. Higley [154 Misc. 158, 277 N. Y. S. 63], supra."

5. Assuming the truth of all the facts well pleaded in the complaint, this court takes the view that it could not sustain a finding that the price at which the stock was sold was so grossly inadequate as to be evidence of fraud, based as it would have to be solely on the disparity between the "book value" and the "market value" of the

stock in question, nor could it sustain a finding of dishonesty grounded on the determination to sell the stock at the market instead of holding it for a liquidating dividend. The pleading becomes a mere charge against Wilson that his judgment was faulty and that, in the situation which prevailed at the time, he should have anticipated that it would have been in the best interests of the stockholders to retain the stock and distribute it in liquidation of the corporation. Upon this no liability can be predicated. As we have said above, general allegations of dishonesty or wrongful conduct, without alleging the facts on which such charges are based, are ineffective. Failure to allege facts other than book value which plaintiff asserts were concealed from him and which Wilson knew would increase the value of the stock is fatal. Such a complaint does not allege a cause of action in behalf of the corporation, and hence is not good in a derivative or representative suit of this character. The demurrers were rightly overruled.

Order affirmed.