## FRANK E. AIPLE v. TWIN CITY BARGE & TOWING COMPANY AND OTHERS.

143 N. W. (2d) 374.

April 22, 1966—Nos. 39,793, 39,801.

 

*Robert W. Johnson, Mark J. Vieno, Berryman, Fisher & Johnson, William Bricen Miller, C. Roy Peterson,* and *Lord, Bissell & Brook,* for appellants.

*Richard J. Leonard, John L. Hannaford, Thomas E. Rohricht,* and *Doherty, Rumble & Butler,* for respondent.

MURPHY, JUSTICE.

This is an appeal from an order and judgment of the district court granting the plaintiff, a minority stockholder, injunctive relief against the defendant corporation and its executive officers. The litigation grows out of the action of the managing directors of the corporation in creating a subsidiary corporation and transferring assets to the subsidiary in exchange for stock, over the negative vote of the plaintiff. The plaintiff contends that this transfer and exchange has violated his minority rights as a stockholder. The suit is one in equity by which the plaintiff seeks to set aside the transfer and to enjoin the defendant corporation from further transfers of corporate assets to the subsidiary or any other corporation except in the ordinary course of business.

It appears that the defendant corporation, Twin City Barge & Towing Co., was created on May 21, 1937. Its principal place of business is in St. Paul, Minnesota. It engages in river harbor transfer and docking business at various locations in and around Minneapolis and St. Paul and also in the Chicago area. This business is similar to that of car-switching in railroad yard terminals. The defendant corporation also maintains and repairs its own barge equipment and barge equipment of other companies. The plaintiff, Frank E. Aiple, a former vice president of the defendant corporation, originally became a stockholder in 1953. The dispute between Aiple and the management of the corporation is one of long standing. From 1951 through 1956 the plaintiff chartered two harbor tow boats to the defendant on a year-to-year basis. The defendant corporation discontinued this arrangement in 1957 and purchased its own boat, after which a dispute followed as to the amount

which the corporation owed to Aiple for the use of these boats. This dispute was eventually settled. The record indicates that plaintiff attempted to discourage the corporation's bank from loaning it the money necessary to purchase the tow boat which replaced the plaintiff's equipment. It also appears that Aiple is financially interested in a competing enterprise known as the Minnesota Harbor Service which leased the two boats the defendant corporation had formerly used. At the time of this litigation, Aiple had invested $7,500 in the Minnesota Harbor Service and they were indebted to him for rentals in a sum somewhere between $50,000 and $60,000. Part of the difficulties grows out of the defendant corporation's claim that the plaintiff's interests and business activities, particularly in connection with the Minnesota Harbor Service, are in conflict with the interests of the defendant corporation. The plaintiff says that if the defendant corporation does not wish to use his boats he is not required to retire them and is justified in leasing them to others.

It appears that since 1957 defendant corporation has had a steady and substantial growth and so far as the record would indicate has profited from prudent management. The management of the defendant corporation has felt that its business could expand and its operations would be more profitable if it had more equity capital and to that end has attempted to increase the capital stock of the corporation. The defendant corporation by its charter is authorized to issue 500 shares of common stock. More than one-third of the outstanding shares are owned by the plaintiff. This fact becomes important since under the provisions of Minn. St. 1961, § 301.37, an amendment to its articles which would permit it to increase the capital stock may only be adopted by the affirmative vote of the holders of two-thirds of the voting shares, or by the affirmative vote of the holders of the majority of the voting shares but not over the negative vote of the holders of more than one-quarter of the voting shares. The governing statute so far as applicable here, Minn. St. 1961, § 301.37, subd. 3, (amendment by L. 1965, c. 504, § 8, not important to this action) provided:

"(1) Amendment of the articles may be made at any meeting of the shareholders, provided notice of proposal to amend, stating the nature of such proposal, shall have been mailed to each shareholder entitled to

vote thereon, at least ten days prior to such meeting, or by written consent of such shareholders given as provided by section 301.26, subdivision 11;

"(2) Except as hereinafter in this section provided, an amendment may be adopted only if it receives either:

"(a) The affirmative vote of the holders of two-thirds of the voting power of all shareholders entitled under the articles to vote, or such larger or smaller vote, not less than a majority, as the articles may require; or

"(b) If not otherwise provided by the articles, the affirmative vote of the holders of a majority of the voting power of all shareholders entitled under the articles to vote and does not receive the negative vote of the holders of more than one-fourth of the voting power of all shareholders entitled to vote."

Accordingly it appears that unless the Articles of Incorporation otherwise provide an amendment may be adopted only in one of two ways: (1) By the affirmative vote of the holders of two-thirds of the voting shares; or (2) by the affirmative vote of the holders of a majority of the voting shares, but not over the negative vote of the holders of more than one-quarter of the voting shares. The Articles of Incorporation of the corporate defendant contain no contrary provisions and accordingly the statutory percentages required to amend the Articles of Incorporation are applicable.

As we have already noted, Aiple's ownership of more than one-third of the common stock has enabled him to prevent an amendment to the Articles of Incorporation which would increase its capitalization. After making several futile attempts to legally amend the articles so as to permit the increase in capitalization, the corporate management finally resorted to the device of creating a subsidiary, transferring part of its business to it, and using the stock of the new subsidiary for the purpose of acquiring new capital.

The trial court found that on December 26, 1963, the board of directors held a special meeting which plaintiff attended. By a vote of 3 to 1, plaintiff dissenting, the board authorized the transfer of assets of its shipyard division and $5,000 working capital to a Delaware

corporation known as Twin City Shipyard, Inc., in return for 4,000 of its 50,000 authorized but unissued capital shares, and the assumption by the new subsidiary of the liabilities of the shipyard division. The transfer was effected December 31, 1963. The Twin City Shipyard corporation was organized by the defendant corporation, its board of directors consisting of the officers of the defendant corporation and two supervisory employees of its shipyard department. They were appointed as proxy voters to vote the parent company stock in the subsidiary without instructions as to how to vote. The president of the parent corporation was authorized to guarantee business obligations of the subsidiary that would be in the best interest of the parent corporation; a cooperative service agreement between the parent and the subsidiary was approved; and authority was given to the officers to carry out the resolutions. The transfer of assets from the parent to the subsidiary represented $52,569.16/$496,000 of the total fixed assets of the parent corporation as of June 30, 1963. The shipyard division transferred from parent to subsidiary represented about $400,000/$1,400,000 of the estimated gross income for 1963 of the parent and $57,000/$900,000 of total assets.

The reason given for this action by the management of the defendant corporation was that there was little stock left to be issued; the defendant corporation was cash poor and needed working capital which could be derived from the unissued stock of the subsidiary. They felt that by this method they could, among other advantages, utilize discounts, decrease interest costs, take advantage of business opportunities requiring ready cash, secure tax benefits, and operate the shipyard division more efficiently. The trial court came to the conclusion that the action of the management of the parent corporation was in violation of the rights of the plaintiff as a minority stockholder and accordingly granted judgment requiring the subsidiary to transfer back to the parent corporation the assets so transferred and enjoining a further transfer of assets which might alter materially the rights of the plaintiff so long as he was the owner of one-third or more of the outstanding common shares of the corporate defendant.

■ It may be agreed at the outset that an increase in capital stock

is a fundamental change in a corporation. If the capital stock is to be increased, such action must be in conformity with the provisions of the Minnesota Business Corporation Act, § 301.37, subd. 3(1,2), requiring notice and affirmative vote of the required percentage of stock. Inasmuch as the power to increase an issue of capital stock is not an incidental or implied power of the corporation, authority to do so must derive from statute and the articles of incorporation. 18 Am. Jur. (2d) Corporations, § 244.

In Railway Co. v. Allerton, 85 U. S. (18 Wall.) 233, 235, 21 L. ed. 902, 903, Mr. Justice Bradley said:

"* * * Changes in the purpose and object of an association, or in the extent of its constituency or membership, involving the amount of its capital stock, are necessarily fundamental in their character, and cannot, on general principles, be made without the express or implied consent of the members. * * *

* * * * *

"* * * To change [the constituency, or capital and membership] without the consent of the stockholders, would be to make them members of an association in which they never consented to become such. It would change the relative influence, control, and profit of each member. * * * Even when the additional stock is distributed to each stockholder *pro rata,* it would often work injustice, because many of the stockholders might be unable to take their respective shares, and might thus lose their relative interest and influence in the corporate concerns."

■ The management of the defendant corporation contends that in organizing the subsidiary they did only what they were expressly authorized to do by their Articles of Incorporation, bylaws, and the statute, and that consent of the stockholders was not necessary. They say that Minn. St. 301.10 permits the corporation to "acquire, hold, mortgage, pledge, or dispose of the shares * * * of any domestic or foreign corporation," and even without express authority in the articles it has the same power if "reasonably necessary or incidental to accomplish the purposes stated in its articles"; that Minn. St. 301.09(4) gives it the power "[t]o acquire, hold, lease, encumber, convey, or otherwise dispose of real and personal property * * *." They further argue that the Articles of Incorporation

permit them to (a) "purchase or convey, sell, assign, *transfer,* lease, mortgage, pledge, exchange or otherwise dispose of real or personal property"; (b) that the corporate defendant may *"acquire* by purchase, subscription, or otherwise, and to *hold* for investment or otherwise deal with *stocks* * * * of *any* corporation, to aid in *any* manner; *any* corporation whose stocks, bonds or other obligations are held * * * by this corporation * * * and to do any other acts or things for the preservation, protection, improving or enhancing of the value of any such stocks owned by this corporation."

It is our view that these general powers refer to the ordinary business transactions of the corporation and do not extend to a reconstruction of the corporate body itself.

They further contend that they were restricted only by one limitation, that provided by Minn. St. 301.36 which indicates that the approval of two-thirds of the voting power is necessary only in the event of a sale of "all or substantially all" of the assets of the corporation. We gather from the brief that the defendants place their principal reliance on this statute. It provides:

"A corporation may, by action taken at any meeting of its board of directors, sell, lease, exchange, or otherwise dispose of all, or substantially all, of its property and assets, including its good will, upon such terms and conditions and for such considerations, which may be money, shares, bonds, or other instruments for the payment of money or other property, as its board of directors deems expedient, when and as authorized by the vote of holders of shares entitling them to exercise at least two-thirds of the voting power on such proposal or the vote of such other proportion, not less than a majority, or vote by classes, as the articles may require, at a shareholders' meeting called for that purpose, or when authorized upon the written consent of the holders of such shares. Notice of any such meetings shall be given to all shareholders of record, whether or not they shall be entitled to vote thereat."

We cannot agree with the defendant corporation that § 301.36 authorizes a corporation to dispose of and transfer something less than "all or substantially all" of the corporate assets under circumstances where the transfer interferes with the legal right of a minority stockholder.

By the ingenious device of creating a subsidiary corporation, the defendants have attempted to circumvent § 301.37, subd. 3. Corporations cannot act with the freedom of individuals; they are confined to those actions expressly authorized by statute and such as are incidental thereto and necessary to carry them into effect. Corporations are organized by natural persons acting under the directions of a statute. Under the circumstances in this case the defendant corporation has attempted to split itself into two corporations for the obvious purpose of increasing the capital stock of the parent company without complying with the provisions of the statute governing that subject. The parent corporation has divided its assets with its own creature, capitalized a portion at a fixed valuation, and received back all of the shares of the stock issued by the subsidiary. If this can be done, the provisions of § 301.37, subd. 3, may be circumvented to the point where a corporation might fragment itself into any number of divisions, thus leaving minority stockholders without the protection that the statute was designed to give them. The effect of the defendants' plan is to diminish the interest of the minority stockholder, or force him to buy stock in a new corporation to protect his proportionate interest or investment.

■ It is unnecessary for us to speculate on the possible effects which might flow from the action of the parent corporation if permitted. It might well be that the plan is constructive from the standpoint of what might be profitable for the stockholders. But we are concerned here with legal rights. We are of the view that the minority stockholder may stand on the legal rights which the law gives him and is entitled to injunctive relief without alleging loss. As was said in Schwab v. E. G. Potter Co. 194 N. Y. 409, 87 N. E. 670, the minority stockholder may insist upon his legal rights and even refuse to accept "something better" in exchange. His legal right is to continue as a member of the corporation and not to be forced into a membership of a second corporation, all the capital of which is taken out of the assets of the corporation in which he holds his stock. See, Eisenberg v. Central Zone Property Corp. 306 N. Y. 58, 115 N. E. (2d) 652.

We agree with the observation contained in the dissent that the plaintiff might well be using his substantial minority interest to deny the

corporation the benefit of good business judgment which the directors wish to exercise. Nevertheless, § 301.37 gives him this right. That statute is part of the contract between the stockholders, the state, and the corporation. If, as it appears, we are faced with the paradox of a minority stockholder using a statute designed for his protection to obstruct and interfere with the best interests of the corporation, the problem is one which should be called to the attention of the legislature. An interpretation to the contrary would establish a precedent inconsistent with the clear intent of the statute as it presently exists.

Affirmed.

THOMAS GALLAGHER, JUSTICE (dissenting).

■ In my opinion the actions of the majority stockholders of defendant corporation in transferring less than 11 percent of the corporation's assets to a subsidiary corporation in return for the controlling stock of the latter were not unlawful. Defendant's articles empower it —

"* * * to lease * * * or sell piers, wharves, boathouses, loading platforms and other landing places necessary in * * * the operation of such business.

"To * * * convey, sell, assign, transfer, lease, mortgage, pledge, exchange, or otherwise dispose of any such property.

"To acquire by purchase, subscription or otherwise, * * * stocks, bonds or any other obligations or securities of any person or corporation, to aid in any manner any corporation whose stocks, bonds or other obligations are held or in any manner guaranteed by this corporation, or in which this corporation is in any way interested, and to do any other acts or things for the preservation, protection, improvement or enhancement of the value of any such stocks * * * owned by this corporation."

Minn. St. 301.09 empowers Minnesota business corporations to acquire, hold, lease, encumber, convey, or otherwise dispose of real and personal property and to enter into obligations or contracts or perform any acts incidental to the transaction of its business or expedient for the attainment of its purposes. Minn. St. 301.10 specifies that when so provided in the articles such corporations may acquire, hold, or dispose

of shares of domestic or foreign corporations when reasonably necessary or incidental to accomplish their purposes. Under the charter powers of defendant corporation as above described and under the statutory powers above referred to, the defendant corporation was fully empowered to transfer to its subsidiary its shipyard division and $5,000 in working capital (the total book value of which was less than 11 percent of the book value of the corporation's assets) and in return therefor to receive all outstanding stock of the subsidiary, amounting to 4,000 shares. The power of a corporation to so act has frequently been recognized by this and other courts. Dworsky v. The Buzza Co. 215 Minn. 282, 9 N. W. (2d) 767; Hill v. Page & Hill Co. 198 Minn. 30, 268 N. W. 705, 927; Bacich v. Northland Transp. Co. 185 Minn. 544, 242 N. W. 379; Calnan v. Guaranty Security Corp. 271 Mass. 533, 171 N. E. 830; Metcalf v. American School Furniture Co. (W. D. N. Y.) 122 F. 115; Logie v. Mother Lode Copper Mines Co. 106 Wash. 208, 179 P. 835. As stated in the Dworsky case (215 Minn. 287, 9 N. W. [2d] 769):

"* * * That a corporation has the power to transfer its assets to, and accept the stock of, a new corporation is clear. Hill v. Page & Hill Co. 198 Minn. 30, 268 N. W. 705, 927."

■ The majority opinion concludes that such transfer was violative of plaintiff's legal rights, presumably as expressed in Minn. St. 301.36 and Minn. St. 1961, § 301.37, subd. 3(2). Section 301.36 provides that a corporation may sell or otherwise dispose of "all or substantially all" of its property and assets when authorized to do so by the vote of holders of shares equal to two-thirds of the corporation's voting shares; while § 301.37, subd. 3(2), specifies that the articles of a business corporation may be amended by the affirmative vote of two-thirds of its voting stock. I cannot see where the transfer of less than 11 percent of a corporation's assets accomplished by the majority vote of its stockholders and directors would constitute a violation of § 301.36, which as indicated provides that a two-thirds vote of the corporation's shares is required only when *"all or substantially all"* of its assets are to be transferred. (Italics supplied.) See, Hendren v. Neeper, 279 Mo. 125, 213 S. W. 839, 5 A. L. R. 927; Shaw v. Hollister Land and Improvement Co. 166 Cal. 257, 135 P. 965; Sewell v. East Cape May Beach Co. 50 N. J. Eq. 717, 25 A. 929;

McCloskey v. New Orleans Brg. Co. 128 La. 197, 54 So. 738; Wattley v. National Drug Stores Corp. 122 Misc. 533, 204 N. Y. S. 254.

■ Likewise, the transfer can scarcely be held to constitute an amendment to defendant's articles in violation of § 301.37, subd. 3(2), which requires a two-thirds vote of stockholders for amendments. The transfer resolutions did not seek to amend the articles which, as presently expressed, authorize the transfer without the need of an amendment. Rather, the acts of the directors and stockholders which plaintiff challenges as unlawful are nothing more nor less than acts which, in the exercise of their business judgment, they felt were essential for the best interests of the corporation in the proper conduct of its business. Accordingly, plaintiff as a minority stockholder, suing on behalf of the corporation, would have no valid cause for complaint as to such actions, particularly where his own obstructive efforts have compelled them. As stated in Warner v. E. C. Warner Co. 226 Minn. 565, 573, 33 N. W. (2d) 721, 726:

"In a derivative suit * * * plaintiff must allege facts which show that the action attacked is so far opposed to the true interests of the corporation as to lead to the clear inference that no officer thus acting could have been influenced by any honest desire to secure such interests, but that he must have acted with intent to subserve some ulterior purpose, regardless of the consequences to his corporation and in a manner inconsistent with its interests. * * *

"The law does not justify recovery in representative suits for mere errors of judgment in handling corporate affairs.

* * * * *

" '* * * The individual shareholders have no authority to dictate to the company's agents what policy they shall pursue, or to impair that discretion which was conferred upon them by the charter.' 1 Morawetz, Private Corporations (2 ed.) § 243.

" '* * * In actions by stockholders, which assail the acts of their directors or trustees, courts will not interfere unless the powers have been illegally or unconscientiously executed, or unless it be made to appear that the acts were fraudulent or collusive and destructive of the rights of the stockholders. Mere errors of judgment are not sufficient as

grounds for equity interference; for the powers of those entrusted with corporate management are largely discretionary.' Leslie v. Lorillard, 110 N. Y. 519, 532, 18 N. E. 363, 365, 1 L. R. A. 465.

"In Flynn v. Brooklyn City R. Co. 158 N. Y. 493, 507, 53 N. E. 520, 524, the court said:

" 'As a general rule courts have nothing to do with the internal management of business corporations. Whatever may lawfully be done by the directors or stockholders, acting through majorities prescribed by law, must of necessity be submitted to by the minority, for corporations can be conducted upon no other basis. All questions within the scope of the corporate powers which relate to the policy of administration, to the expediency of proposed measures, or to the consideration of contracts, *provided it is not so grossly inadequate as to be evidence of fraud*, are beyond the province of the courts. The minority directors or stockholders cannot come into court upon allegations of a *want of judgment* or *lack of efficiency* on the part of the majority and change the course of administration. Corporate elections furnish the only remedy for internal dissensions, as the majority must rule so long as it keeps within the powers conferred by the charter.' "

■ The majority opinion in effect holds that the transfer of a part of the assets of defendant corporation to a subsidiary for the purpose of obtaining needed financing to attain corporate objectives cannot be regarded as within the ordinary course of the corporation's business. The only reason for this must be because the actions taken appear to frustrate the disruptive efforts of a minority stockholder to prevent corporate financing and expansion because of his interest in a rival corporation. In my judgment the conduct of corporate business through corporate subsidiaries formed by the personnel of the parent corporation for various reasons, including tax avoidance as well as local financing, cannot be regarded as other than a common or ordinary manner of doing business.

■ Finally, it cannot be said that the actions taken by the majority directors and stockholders which are challenged here have in any way affected plaintiff's proportionate rights in defendant corporation. Obviously, he will continue to have the same proportionate vote and to

exercise the same proportionate voice in the operation of the shipyard division through the subsidiary which defendant corporation controls as he originally had when the shipyard division was part of the corporation's assets.