# IN RE DISSOLUTION OF E. C. WARNER COMPANY.[1]

December 15, 1950.

No. 35,205.

[1]Reported in 45 N. W. (2d) 388.

See, 226 Minn. 565, 33 N. W. (2d) 721.

*R. H. Fryberger* and *M. R. Keith,* for objectors-appellants.

*Morley, Cant, Taylor & Haverstock* and *Dorsey, Colman, Barker, Scott & Barber,* for respondents.

MATSON, JUSTICE.

Appeal from an order directing the liquidating receiver of the E. C. Warner Company, a corporation, to pay $15,000 to claimants, two legal firms,[2] as fees for legal services performed in successfully defending an officer and director of said corporation in three derivative actions.

If a stockholder's derivative action brought to recover for waste and depletion of assets alleged to have been caused by dereliction of duty by an officer and director *is terminated upon the merits in favor of such director and officer,* may the corporation *thereafter* be required to pay the attorneys' fees which were incurred by him for his own personal defense and vindication? This primary issue arises from three representative suits brought by a minority stockholder against the E. C. Warner Company, a corporation (as a nominal defendant), and against A. E. Wilson, who was president and treasurer of the corporation as well as a director. Upon appeal to this court from an order overruling plaintiff's demurrers to certain defenses, such order was affirmed and in effect the entire action was terminated upon the merits in favor of defendant Wilson.

[2]Messrs. Morley, Cant, Taylor & Haverstock and Messrs. Dorsey, Colman, Barker, Scott & Barber.

See, Warner v. E. C. Warner Co. 226 Minn. 565, 33 N. W. (2d) 721. Two other derivative actions, involving substantially the same issues and therefore controlled by the above decision, have, without appeal, been terminated in favor of said A. E. Wilson.

Shortly after the termination of such derivative suits, a petition for a voluntary dissolution of the corporation pursuant to M. S. A. 301.47 was filed, and on March 7, 1949, the district court made an order dissolving the corporation and appointing W. C. Preus as receiver. This was followed by an order directing creditors of the corporation to file their claims and setting a date for a hearing thereon. Messrs. Morley, Cant, Taylor & Haverstock and Messrs. Dorsey, Colman, Barker, Scott & Barber, the respondents herein, filed a claim of $15,000 for the legal services which they had rendered to A. E. Wilson in successfully defending and vindicating him against charges of alleged misconduct as an officer and director. A hearing on objections to the allowance of said creditors' claim was finally set for November 23, 1949. Notice of the hearing was seasonably given to all stockholders, inclusive of the appellants herein.

On October 18, 1949, the receiver filed his report, which set forth the nature of respondents' claim for attorneys' fees and *requested the court, because the receiver was doubtful as to the propriety of the claim, to determine at the hearing whether it was valid and, if valid, whether it was reasonable as to amount.* On November 8, 1949, appellant stockholders served a demand on the receiver that he object to the claim for Mr. Wilson's attorneys' fees. On November 10, 1949, the receiver filed his second report, by which appellants set out their objections to respondents' claim, submitted said objections to the court for its consideration, and requested permission to present appellants' objections at the hearing by their counsel. The requested permission was granted. At the hearing on November 23, 1949, counsel for appellants and for claimants presented arguments to the court on the question of corporate liability on the claim. The court by order filed January 5, 1950, allowed, and directed the receiver to pay, said claim. It is from the latter order

that the minority stockholders and objectors to said claim have taken this appeal.

It is important to bear in mind that although a corporation is named as a defendant in a derivative suit, such action by a minority stockholder is essentially for the benefit of the corporation, and in that beneficiary sense the corporation, although standing as a neutral *pendente lite,* is the true plaintiff. Meyers v. Smith, 190 Minn. 157, 251 N. W. 20; Solimine v. Hollander, 129 N. J. Eq. 264, 19 A. (2d) 344; Ballantine, Corporations (Rev. ed.) § 154. It is uniformly held that if in his derivative action a plaintiff stockholder is successful upon the merits so as to confer a tangible corporate benefit he is entitled to be reimbursed by the corporation for his reasonable expenses, inclusive of attorney's fees.[3] But what is the position of a defendant director if he is successful in securing a vindication upon the merits in such action? May he look to the corporation for reimbursement for his attorney's fees and expenses? If he may, is his right of recovery dependent upon being able to show that his successful defense has conferred a specific corporate benefit? Clearly, neither party to a derivative action is entitled to payment or reimbursement of any expenses incurred, or to be incurred, prior to, and in the absence of, a successful result upon the merits. The ultimate result of the litigation is controlling. In the interim, as a matter of fair play, the corporation with all its assets stands impounded as a neutral.

"* * * There is a vast difference between letting a director fight the battle at his own expense—with reimbursement if he is vindicated—and using the power of the corporation to aid in the fight before it is shown whether or not he is a faithful servant who de-

[3]Winkelman v. General Motors Corp. (D. C.) 48 F. Supp. 504; Mecartney v. Guardian Trust Co. (8 Cir.) 280 F. 64; Colley v. Wolcott (8 Cir.) 187 F. 595; Rogers v. Hill (D. C.) 34 F. Supp. 358. "But mere declaratory relief in respect of the rights of preferred and common shares may not constitute a sufficient corporate benefit to support an award of fees." Ballantine, Corporations (Rev. ed.) § 156. For general discussion of subject matter, see Annotation, 152 A. L. R. 914-923.

serves indemnity. * * * The rule under discussion is designed to produce fair play—to prevent the plaintiff from being overwhelmed by the company's financial power before the real defendants have shown their guilt or innocence." 40 Col. L. Rev. 431, 438-439.

■ The question as to the right of a judicially vindicated director to reimbursement is an open one in this jurisdiction.[4] Relatively few courts have dealt with the problem, and their decisions are by no means uniform in conclusion or as to the theory upon which they have proceeded. In Figge v. Bergenthal, 130 Wis. 594, 625, 109 N. W. 581, 592, 110 N. W. 798, the court allowed a recovery for no other reason than that "if no case is made against defendants it is not improper or unjust that the corporation should pay for the defense of the action." In Griesse v. Lang, 37 Ohio App. 553, 175 N. E. 222, a right of recovery was denied principally on the basis that the vindicated directors had not thereby conferred a benefit on the corporation.[5] In Solimine v. Hollander, 129 N. J. Eq. 264, 19 A. (2d) 344, the court, although it found a corporate benefit, held such benefit not to be essential to a right of recovery and allowed recovery on the basis of sound policy. In New York Dock Co. Inc. v. McCollom, 173 Misc. 106, 16 N. Y. S. (2d) 844, a right of recovery was denied, in that no substantial benefit accrued to the

[4]Appellant cites Meyers v. Smith, 190 Minn. 157, 251 N. W. 20, and McCourt v. Singers-Bigger (8 Cir.) 145 F. 103, as indicating the rule favored by Minnesota. Neither decision is in point. In the Meyers case, the court held that the corporation could not take defensive action in a derivative suit, since it was only nominally a party defendant. No question pertaining to compensation of the officers and directors for attorney's fees was before the court *because the lawsuit had not then terminated.* The McCourt case merely holds that the successful plaintiffs may recover their attorney's fees from the fund *which the corporation recovered as a result of the action.*

[5]The Ohio court took note of Figge v. Bergenthal, 130 Wis. 594, 109 N. W. 581, 110 N. W. 798, but said that it had been overruled by the later Wisconsin case of Jesse v. Four Wheel Drive Auto Co. 177 Wis. 627, 189 N. W. 276. A cursory reading of the Jesse case shows that the Ohio court was in error.

corporation.[6] No purpose will be served by a review of, or an attempt to reconcile, the various decisions. See, Annotation, 152 A. L. R. 909, 922-928. Confusion has resulted from a failure to recognize that the position of a director of a corporation, though fiduciary in many respects, is *sui generis*[7] and is not to be confused with the position of that of a trustee, quasi trustee, or agent.[8]

"* * * The apparent confusion in this variety of terms has been provocative of efforts to define the director's position wholly in terms of one or the other of these concepts. Such efforts, however, misconceive the problem; the total status of a modern director is a composite of legal relationships and cannot be defined in terms of any one alone." 20 Iowa L. Rev. 808.[9]

■ Any corporate or other artificial body, which by specific grant or by virtue of compliance with certain statutory conditions (such as compliance with a general incorporation law) is permitted to operate as a collective unit separate and apart from its individual members and is otherwise vested with privileges not common to the citizens in general, is thereby accorded by favor of the state a

---

[6]It is interesting to note that in 1941 as a result of the case of New York Dock Co. Inc. v. McCollom, 173 Misc. 106, 16 N. Y. S. (2d) 844, the New York legislature passed a statute validating (a) charter provisions or bylaws authorizing reimbursement of directors for expenses except when adjudged liable for negligence or misconduct, and (b) authorizing payment by the corporation of expenses of officers or directors in successfully prosecuting or defending an action. 22 McKinney's Consol. Laws New York Ann., c. 23, Gen. Corp. Law, § 27-a, as amended by L. 1941, c. 350, L. 1944, c. 711, and renumbered § 63 by L. 1945, c. 869; 30 Cornell L. Q. 249, note.

[7]Stevens, Corporations (2 ed.) 647; 2 Machen, Corporations, § 1399; 40 Col. L. Rev. 431, 448; 23 Ill. L. Rev. 653, 670-672; 45 Harv. L. Rev. 1374, 1389; 20 Iowa L. Rev. 808; 19 Boston U. L. Rev. 12, 15-16. See and cf. Horn Silver Min. Co. v. Ryan, 42 Minn. 196, 44 N. W. 56; Minnesota L. & T. Co. v. Peteler Car Co. 132 Minn. 277, 156 N. W. 255; Lake Harriet State Bank v. Venie, 138 Minn. 339, 165 N. W. 225; M. S. A. 301.31.

[8]Spellman, Corporate Directors, §§ 1 to 7 and 261; Ballantine, Corporations (Rev. ed.) § 66.

[9]See, Enyart v. Merrick, 148 Or. 321, 34 P. (2d) 629; 2 Machen, Corporations, § 1399.

status which by its very nature carries with it an inherent obligation that its acts shall be compatible with the public welfare. It goes without saying that it is not the function of the state, by general act or otherwise, to confer, or give legal significance to, a unique status or special privilege except on the implied condition that it shall be enjoyed in a manner not inimical to the public. Acts are responsible or irresponsible according to the leadership by which they are inspired. The acts of a corporation within its charter are but a reflection of the policy supplied by its management. It follows that a sound public policy militates against the borrowing of legal rules and concepts from seemingly analogous fields when their application to corporate problems ceases to be compatible with the promotion of a sound corporate leadership. If we are not to do violence to the practical necessities of responsible corporate management, we cannot fit the *sui generis* position of officers and directors into old fiduciary forms. The law as to trustee and *cestui*—as well as the law governing principal and agent and guardian and ward—had taken fairly definite form before the modern type of corporation had become a factor in the business world[10] and before its influence and its obligations as a social factor had been recognized.[11] If in keeping with the "benefit theory," applied by some jurisdictions to the trustee of an express trust,[12] we hold that liability to charges of misconduct is one of the inherent hazards impliedly assumed in accepting a corporate directorship, and that therefore a director is not entitled, after a *successful defense upon the merits,* to reimbursement for his reasonable expenses *unless he can show a specific benefit to the corporation,* we shall have then, in contravention of sound public policy, placed a premium upon faithless and irresponsible corporate leadership and

---

[10]See, 23 Ill. L. Rev. 653, 670-672.

[11]See, 45 Harv. L. Rev. 1145, and particularly quotation from address of Owen D. Young on p. 1154.

[12]It is unnecessary to determine what the Minnesota rule is as applied to trusts. See, however, Andrist v. First Trust Co. 194 Minn. 209, 260 N. W. 229, and In re Trusteeships Under Will of Drake, 195 Minn. 464, 263 N. W. 439; Annotation, 101 A. L. R. 806.

214

action. In the first place, directors and officers have not only a right but a fiduciary duty to stand their ground against any unjust attack which, if permitted to go unchallenged, will ultimately remove the guidance of the corporate activity from the hands of those to whom the stockholders had previously committed it. In the light of this obligation of faithful stewardship, the policy of the law should be to encourage directors to resist unjust charges, in the confidence that ultimately, if their innocence be judicially established, they will be reimbursed for their necessary expenses of defense. Solimine v. Hollander, 129 N. J. Eq. 264, 19 A. (2d) 344. Unless this is the rule, we have the further result that it is not likely that men of substance will be willing to assume the responsibility of corporate directors.

"* * * Such a rule enables the director of limited means to enlist the professional service and aid of competent counsel who will be willing to undertake the defense upon the assurance that, if successful, payment would be forthcoming from the corporate treasury. The withholding of such assurance might well have the effect of denying the financially disabled director the opportunity of adequate representation in the suit against him. *But what is more important than this is the fact that the right to reimbursement is a circumstance that would actuate and induce responsible business men to accept the post of directors,* the amoluments of which would otherwise never be commensurate with the risk of loss involved in paying out of their own pocket the costs involved in defending their conduct. *The right of reimbursement carries with it the added virtue that it is likely to discourage in large measure stockholders' litigation of the strike variety with which the courts are not unfamiliar."* Solimine v. Hollander, 129 N. J. Eq. 272, 19 A. (2d) 348. (Italics supplied.)

This right of reimbursement has its foundation in the maintenance of a sound public policy favorable to the development of sound

corporate management as a prerequisite for responsible. corporate action.[13]

It follows that irrespective of any showing of direct or tangible benefit to the corporation, a corporate director, *after he has been vindicated on the merits* in a shareholder's derivative suit charging him with dereliction of duty, is entitled to be repaid his reasonable expenses out of corporate funds. Undoubtedly, a vindication of the integrity of the corporate management is in a certain general sense beneficial to the corporation from the standpoint of preserving the confidence of its creditors and of its prospective investors, as well as in the maintenance of the morale of its employes and stockholders, but such a general benefit is not the foundation of the right of recovery. A general benefit of this nature is but an incident of sound corporate management.

■ What is a reasonable amount for defense expenses, inclusive of attorney's fees, to be allowed a director after he has been judicially vindicated upon the merits in a derivative action, rests in the sound discretion of the trial court. We find here no abuse of discretion.

■ Appellants raise the question as to whether a liquidating receiver appointed pursuant to § 301.47 has the duty of contesting any and all claims. In a voluntary dissolution proceeding, the corporation is before the court for liquidation, and the receiver is only an officer of the court in perfecting and consummating such proceedings in a manner that will preserve the corporate assets and hold them ready for disposal in accordance with the final adjudication of the rights of the interested parties. As part of the process, claims filed against the corporation must in some manner, with a full disclosure of all relevant data, be presented to the court for

---

[13]The wisdom of this principle is widely recognized. See, 40 Col. L. Rev. 431; 27 Ky. L. J. 104; 26 Minn. L. Rev. 119-121. It is significant that after the court in New York Dock Co. Inc. v. McCollom, 173 Misc. 106, 16 N. Y. S. (2d) 844, had laid down a contrary rule, the New York legislature by statute established the right of a judicially vindicated director to reimbursement; see footnote 6, page 212, *supra.*

allowance. As an arm of the court, a receiver cannot champion the claims of creditors either singly or collectively, but in certain respects he represents the collective body of creditors in the protection of rights which are common to all creditors as well as to others who are interested in the corporate assets. Pursuant to § 301.52, a receiver is not required to contest all claims. He may contest claims which he has reason to believe are fictitious, excessive, fraudulent, or otherwise improper. Under § 301.52, in proceedings subject to the supervision of the court, he has the express authority to compromise, compound, and settle claims in favor of or against the corporation *upon such terms as he shall deem best, but no such compromise, composition, or settlement is valid unless approved by the court.* He is vested with a sound discretion as to whether he shall directly contest a claim; or present to the court for approval a proposed compromise, composition, or settlement thereof; or whether the claim should be presented to the court, without recommendation, for the determination of a question of law. A receiver fully performs his duty when he presents all factual matters and all legal questions of corporate liability to the court with ample opportunity for the claimants and objectors to argue the issues. See, § 301.54. The manner in which the adjudication of a claim is accomplished must to some extent depend upon the circumstances of each case. See, 45 Am. Jur., Receivers, §§ 236, 237. In the instant matter, there was a serious legal question involved which the receiver presented to the court for determination with ample opportunity for the claimants and objecting stockholders to be heard, with the results that all issues were thoroughly litigated. There is little basis for criticism where, as here, the procedure followed results in an adjudication upon the merits. See, 2 Dunnell, Dig. & Supp. § 2158.

In view of the fact that this case involves a fundamental question of law which has not heretofore been settled in this jurisdiction, and particularly because there has been no showing of prejudice,

it is unnecessary to consider the alleged misconduct of counsel. See, Moose v. Vesey, 225 Minn. 64, 29 N. W. (2d) 649.

The order appealed from is affirmed.

Affirmed.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.

