**MOONEY v. WILLYS–OVERLAND MOTORS, Inc.**

Civ. No. 1303.

United States District Court
D. Delaware.

April 14, 1952.

James R. Morford and Thomas Cooch (of Morford, Bennethum, Marvel & Cooch), Wilmington, Del., for plaintiff.

Clarence A. Southerland and David F. Anderson (of Southerland, Berl & Potter), Wilmington, Del., for defendant.

LEAHY, Chief Judge.

This is an action for breach of contract[1] brought by James D. Mooney[2] against the Willys-Overland Motors, Inc., a Delaware corporation.[3] Mooney is a mining, mechanical and automotive engineer whose business is industrial engineering.[4] Some time in 1945, Mooney, then a director and vice-president of General Motors, was approached by Willys through two of its officers, Canaday and Ritter, to leave the employ of General Motors and go with Willys.[5] After extended negotiations between Mooney and his counsel, and Canaday and Ritter for Willys, a contract dated December 26, 1945 between Mooney and Canaday was executed and in January 1946[6] Mooney began his employment with Willys. Mooney assumed the office of President of Willys, Chairman of the Board, a director, Chairman of the Executive Committee, and a member of the Finance Committee.

Then, on May 20, 1949, Mooney terminated his relationship with Willys by an express contract which looked to a settlement of their cross differences and which had already been approved by the Board of Directors of Willys.

On August 31, 1948, prior to Mooney's departure from Willys, a stockholders' derivative action was filed in the Court of Chancery of Delaware by one Krinsky. Among defendants were Willys, certain other corporate defendants, and several named individuals, among them Mooney, Edward L. Love and Charles E. Sorensen. On November 12, 1948, another stockholders' derivative action alleging the same causes of action with the same plaintiff

and the same defendants was filed in this court. Mooney was not served with process in either of those causes and did not, prior to the dismissal of the State and Federal causes, formally appear. Immediately upon learning of the Krinsky litigation, Mooney employed James B. Alley, Esq. ("Alley") of the firm of Hooker, Alley & Duncan of New York as his personal counsel.[7] After several conferences with Mooney, Alley sent a letter dated November 29, 1948 to Mooney in which the merits of the Krinsky litigation were discussed and Mooney was advised as to any possible personal liability. Apart from his discussion of the merits of Krinsky's action, Alley wrote Mooney: "You * * * cannot be held personally liable for anything alleged in the complaint until you have been properly served."[8]

Mooney was, however, in his words, "extremely sensitive to the implications and possible consequences"[9] of the Krinsky suit and determined "to defend vigorously" and without compromise[10] the charges made against him. Mooney, I believe, had a reputation to sustain in the professional and business community. Acting on behalf of Mooney, Alley attended conferences of attorneys in New York and Toledo when policies regarding the defense of the Krinsky action were formulated and the factual data to be presented were initially discussed.[11] Alley's services included, inter alia, the examination of voluminous factual data, appraisals and other reports, schedules, memoranda, prospectus, corporate minutes, proxy and registration statements, notices, contracts and correspondence, in addition to studying pleadings, proposed pleadings and orders. The Krinsky litigation was dismissed upon the merits with prejudice to Willys and all of its stockholders by order of Chancellor Harrington on July 27, 1949. A similar order

1. Findings of Fact and Conclusions of Law are being filed separately.

2. Hereinafter referred to as "Mooney".

3. Hereinafter referred to as "Willys".

4. R. p. 21.

5. R. p. 31.

6. R. p. 21.

7. R. pp. 32, 120.

8. Letter, Hooker, Alley & Duncan to Mooney, November 29, 1948, PX. 14.

9. R. p. 33.

10. R. p. 35.

11. R. p. 63.

was entered in this court on November 21, 1949.

Not all the causes embraced in the Krinsky allegations in the various complaints were dismissed with prejudice. As to the issues presented by the second amended complaint, the Chancellor, after hearing testimony and documentary evidence, found: "(1) * * * the price paid by [Willys] to the defendant Willys Real Estate Realization Corporation in 1946 for the shares of stock of Wilson Foundry & Machine Company was not grossly excessive and was in fact fair and reasonable, and the plant and equipment of said Wilson Foundry & Machine Company was and has been necessary and useful to [Willys]; (2) the price paid by [Willys] to the defendant Willys-Real Estate Development Corporation in 1946 for certain real estate in the City of Toledo, Ohio * * * was not grossly excessive and on the contrary was fair and reasonable, and said real estate was and has been necessary and useful to [Willys]." In respect to the issues set forth in the second amended complaint, the Krinsky case was dismissed upon the merits and with prejudice to Willys and all its shareholders.

The cause of action set forth in the original and first amended complaints in Paragraphs 14 to 19 inclusive having to do with the employment by Willys of Charles E. Sorensen was dismissed with prejudice as to Krinsky but without prejudice as to Willys or its other shareholders. An amendment filed in March 1949 withdrew the cause of action based upon the Sorensen transaction. The Sorensen transaction is now the subject of a separate suit in Michigan.[12]

The Sorensen employment contract was entered into by Willys in 1944, before Mooney was affiliated with Willys. Mooney, furthermore, was not affiliated with Willys at the time of the purchase by Willys in 1945 of tools and equipment from Wilson Foundry & Machine Company. At Willys' directors' meetings, Mooney disqualified himself from voting on the purchase of either Wilson Foundry stock or the real estate from Willys-Real Estate Development Company.

On June 28, 1949, Willys wrote to Mooney referring to the pending motion to dismiss the Krinsky case and requesting "a statement from [Mooney] as to the approximate time and expense to which [Mooney was] put in connection with this case." Alley answered this letter for Mooney in July, 1949, gave Mooney's time, referred to his out-of-pocket expenses and stated also there would be expenses for Mooney's counsel but a bill had not yet been presented to Mooney since Alley was awaiting the outcome of the motion for dismissal scheduled for July 27, 1949. After the Krinsky action was dismissed, Alley submitted a bill to Mooney for professional services ($11,000) and disbursements ($586.63). Alley's bill was paid by Mooney August 19, 1949, and Mooney forwarded the receipted bill to Willys on the same day with a letter in which he stated:

"You will recall that the reimbursement of these expenses is provided for by the by-laws of the Corporation and was discussed at the time of my resignation from the Company and the matter was specifically covered in Clause 7 of the contract between Willys-Overland Motors, Inc., and myself, executed May 20, 1949." [13]

*Three months* passed without response by Willys to Mooney's letter until, finally, in the latter part of November, 1949, Milton McCreery, secretary of Willys, in answer to an inquiry from Alley, wrote to Mooney informing him the Board of Directors had considered Mooney's request for reimbursement and had instructed McCreery to advise Mooney "that in accordance with Article XXIII of the By-Laws of the Corporation they agreed to reimburse [Mooney] for reasonable payment of counsel fees incurred in the [Krinsky] action * * * ; that, in the opinion of the Board of Directors, the [Alley] bill * * does not meet the requirements of the By-

12. R. pp. 187–88.

13. Letter, Mooney to George L. Palmer, Treasurer of Willys, August 19, 1949, PX. 17.

Laws, which provide for reimbursement of any expenses reasonably incurred."[14] McCreery further wrote to Mooney that the Willys Board has requested Mooney to "give further consideration to the bill as submitted". Alley answered McCreery's letter by detailing the services he had rendered Mooney and emphasizing the reasonableness of the bill.[15] McCreery's answer[16] made explicit the objection of the Willys Board for non-payment of Alley's bill. McCreery wrote: "The Board of Directors of this Corporation has stated, in its opinion, the bill does not meet the requirements of the By-Laws, for the reason that the amount of the bill is unreasonable." Alley in reply reiterated his previous stand the bill is "reasonable and fair".[17] McCreery acknowledged Alley's letter and said he would submit Alley's letter to the Board at its next meeting.[18] On March 2, 1950, the Willys Board met and after reconsidering Mooney's request for reimbursement in the light of Alley's letters concluded there was "no basis for changing their prior opinion that the bill does not meet the requirements of the By-Laws, which provide for reimbursement of any expenses reasonably incurred."[19] McCreery so informed Alley.[20] The reply to McCreery was the institution of the case at bar in this court on March 24, 1950, by Mooney to recover the amount he had paid to Alley for legal services in the Krinsky matter.[21]

Plaintiff grounds his claim for recovery in this action on three bases. The first is reliance upon Paragraph 7 of the May 20, 1949 agreement as a contract determinative of Mooney's right to reimbursement leaving only the question of amount open and that question circumscribed within the term "reasonable". Second, plaintiff claims at common law absent special contract or specific statute or by-law he could recover his legal expenses. In re E. C. Warner Co., 1950, 232 Minn. 207, 45 N.W.2d 388. Third, plaintiff asserts § 2(10) of the Delaware Corporation Law, Rev.Code 1935, § 2034, subd. 10, as added by 44 Del.Laws, c. 125, and By-Law XXIII of Willys passed pursuant to § 2(10) entitle the plaintiff to be indemnified. Set in juxtaposition to plaintiff's grounds, defendant argues: 1. the provisions of Paragraph 7 of the May 20, 1949 contract constitute nothing more than a reservation of Mooney's rights, if any, under Article XXIII of the by-laws and these provisions have not been waived or modified; 2. Mooney cannot be idemnified under the Delaware statute or the Willys by-laws because he does not meet the tests set forth in them; 3. in any view of the case, Alley's services were not "expenses actually and necessarily incurred"[22] or "reasonably incurred"[23] by plaintiff "in connection with the defense" of the Krinsky action.[24]

1. Both counsel for plaintiff and defendant during the course of trial in their briefs and oral argument have urged the court to consider, interpret, and apply § 2(10)[25] of

14. Letter, McCreery to Mooney, November 25, 1949, PX. 19; Finance Committee Resolution, November 17, 1949, PX. 40; Board of Directors Resolution, PX. 40a.

15. Letter, Alley to McCreery, December 23, 1949, PX. 20.

16. Letter, McCreery to Alley, January 9, 1950, PX. 21.

17. Letter, Alley to McCreery, January 31, 1950, PX. 22.

18. Letter, McCreery to Alley, February 9, 1950, PX. 23.

19. Minutes of meeting of Board of Directors of Willys, March 2, 1950, PX. 40b.

20. Letter, McCreery to Alley, March 4, 1950, PX. 26.

21. Mooney also seeks his expenses, here, including reasonable counsel fees of $5,000 and an item for interest, in this action.

22. Delaware Corporation Law, § 2(10).

23. Willys By-Law XXIII.

24. Defendant claims plaintiff's second point, i. e., plaintiff could recover his expenses in the Krinsky action at common law, is "wholly extraneous to the issue" since the Delaware statute which, defendant argues, controls this case did not grow out of common law but rather confers upon Delaware corporations a power which did not theretofore exist.

25. § 2(10). "To indemnify any and all of its directors or officers or former directors or officers or any person who may have served at its request as a director

the Delaware Corporation statute in this case. Defendant's position, in short, is the first three charges in the Krinsky complaint (Wilson Foundry stock, Wilson Foundry tools, and the real estate) charged Mooney as a shareholder of Empire Securities, Inc., which owned all the stock of Realization and directly and indirectly owned over 30% of the voting stock of Willys, with violating along with Canaday and Ritter, who owned the balance of the stock of Empire Securities, Inc., the fiduciary duty which they as majority "shareholders" of Willys owed to the minority. Defendant claims Mooney as a matter of law would be disqualified from the performance of his duties as a director of Willys in the matters charged in the Krinsky complaint. Blish v. Thompson Automatic Arms Corp., Del.1948, 64 A.2d

581. It follows, therefore, defendant asserts, Mooney could not be entitled to indemnity for expenses incurred in an action charging him with responsibility, for the commission of wrongs which he could not in law commit *as a director*. Moreover, defendant argues, Mooney is not entitled to reimbursement under the statute since his expenses were not incurred in defending some action taken by him in the administration of his office and, in respect to the Krinsky charges, as a matter of law, Mooney was disqualified from administering his office in the matters complained of.[26]

The third point of defendant is the nature of Alley's services was not "expenses actually and necessarily incurred" (or "reasonably incurred") by Mooney "in connection with the defense" of the Krinsky ac-

or officer of another corporation in which it owns shares of capital stock or of which it is a creditor against expenses actually and necessarily incurred by them in connection with the defense of any action, suit or proceeding in which they, or any of them, are made parties, or a party, by reason of being or having been directors or officers or a *director or officer* of the corporation, or of such other corporation, except in relation to matters as to which any such director or officer or former director or officer or person shall be adjudged in such action, suit or proceeding to be liable for negligence or misconduct in the performance of duty. Such indemnification shall not be deemed exclusive of any other rights to which those indemnified may be entitled, under any by-law, agreement, vote of stockholders, or otherwise."

The Willys By-Law is as follows:

"XXIII. *Indemnification of Directors and Officers.* The corporation shall indemnify each director and officer of the corporation against all or any portion of any expenses reasonably incurred by him in connection with or arising out of any action, suit or proceeding in which he may be involved by reason of his being or having been an officer or director of the corporation (whether or not he continues to be an officer or director at the time of incurring such expenses), such expenses to include the cost of reasonable settlements (other than amounts paid to the corporation itself) made with the view to curtailment of cost of litigation, except that no sums shall be paid in connection with any such settlement unless the corporation is advised by inde-

pendent counsel that the officer or director so indemnified was not derelict in the performance of his duty as such officer or director. The corporation shall not, however, indemnify such director or officer with respect to matters as to which he shall be finally adjudged in any such action, suit or proceeding to have been derelict in the performance of his duty as such director or officer, nor in respect of any matter on which any settlement or compromise is affected, if the total expense, including the cost of such settlement, shall substantially exceed the expense which might reasonably be incurred by such director or officer in conducting such litigation to a final conclusion and in no event shall anything herein contained be so construed as to protect or to authorize the corporation to indemnify any such director or officer against any liability to the corporation or to its security holders to which he would otherwise be subject by reason of willful misfeasance, bad faith, gross negligence or reckless disregard of the duties involved in the conduct of his office. *The foregoing right of indemnification shall not be exclusive of other rights to which any director or officer may be entitled as a matter of law.*" (Emphasis added.)

26. So far as the Sorensen cause of action is concerned, defendant says, *arguendo*, assuming Mooney by appearing risked personal liability, he still could not be reimbursed since no apportionment of his legal fees was made and, therefore, the amount attributable to the Sorensen charge has not been proved.

tion. Defendant in support of its position argues Mooney was not compelled to defend the Krinsky action since he was never served with process and did not appear and, therefore, was in no possible danger of liability of any kind in the suit. As to Alley's work, Willys claims it does not fall within the scope of the Delaware statute since it was "mere duplication of the office work" performed by Willys' counsel.

2. I do not propose in this opinion to accept the urgings of counsel and make the first judicial exposition of the Delaware statute [§ 2(10)] since in my view it is unnecessary to do so.[27] Here, plaintiff and defendant had agreed to terminate a contract of employment; and, as part of a give and take, Mooney was to have his attorneys' fees paid as well as, for example, the cost of the transportation and moving of his furniture from his old home to the place where he intended to establish a new home after such employment was terminated.[28] All of the terms of the agreement looking to the finish of his employment with defendant

were, I think, provisions a company may reasonably make in order to terminate a contract of employment which the company desires to end. What I think is controlling of Mooney's claim here is the contract between him and Willys of May 20, 1949, particularly paragraph 7,[29] entered into at the time of Mooney's severance from the employ of Willys.

█ 3. A reading of the May 20 contract in its entirety convinces me the interpretation plaintiff gives to this document is correct. Willys agreed to pay Mooney for his expenses in the Krinsky litigation subject to the qualification these expenses be reasonable as to amount. There was no question raised before the execution of this contract nor after it—until this suit—as to Mooney's right to be reimbursed and, in fact, in the entire discussion of the bill between McCreery and Alley, the only objection Willys raised to the payment of the bill was that as submitted it was "unreasonable".[30] At no time has it been denied

27. The fullest discussion to be found of the problem of directors' indemnification is that in Washington's "Corporate Executives' Compensation" (1942), Ch. 16, "Company Defense of Management"; Ch. 17, "Reimbursement of Litigation Expense"; Ch. 19, "Directors' Indemnity Agreements". To indicate the growth of law in recent years on these topics, it may be noted in the revised edition of Washington's work, entitled "Compensating the Corporate Executive" (1951), Judge Washington says in the Preface: "The chapters on indemnity and reimbursement have been omitted from the present volume. They involve material of distinctive character, appropriate for treatment in a separate book. This may be attempted at a later date."

An excellent discussion of the background and evolution of directors' indemnity is found in the article of Bates and Zuckert, "Directors' Indemnity; Corporate Policy or Public Policy", 20 Harv. Bus.Rev. pp. 244–64.

See, too, "Directors' Expenses in Stockholders' Suits", 43 Col.L.Rev. 301–16; and "Litigation Expenses of Corporate Directors in Stockholders' Suits", 40 Col. L.Rev. 431; 30 Cal.L.Rev. 667, 670–76; and Douglas, "Directors Who Do Not Direct", 47 Harv.L.Rev. 1305, 1328, n. 63.

28. By paragraph 3 of the May 20, 1949 agreement Willys agreed to reimburse Mooney for his expenses in moving his furniture from Toledo, Ohio, to New York.

29. Paragraph 7 of the May 20, 1949 contract reads:
"7. Willys-Overland agrees to indemnify Mooney in accordance with the provisions of Article XXIII of the By-Laws in connection with expenses incurred by him arising out of suits now pending in the Delaware Chancery Court and in the United States District Court of Delaware against Willys-Overland Motors, Inc., Empire Securities, Inc. and Willys Real Estate Realization Corporation, in which certain directors of Willys-Overland Motors, Inc. are named as defendants."

30. I think it significant Willys requested Mooney to submit a bill for his time and expenses in the Krinsky litigation. Letter, McCreery of Willys to Mooney, June 28, 1949, PX. 15. Certainly such a request would be inconsistent with the defendant's view assuming it was the same at the time the agreement was entered into.
"It is a familiar rule of construction that where a contract is ambiguous, that construction given to it by the acts and conduct of the parties with knowledge of

by defendant it knew Mooney had employed Alley, and in the face of the evidence of this case Willys could not do so. Willys knew, too, Mooney was devoting much time to the Krinsky litigation.[31] Mooney's expenses for counsel in the Krinsky case were of importance to him and a claim he asserted against Willys. I read the May 20, 1949 contract to be Willys' recognition of the claim and a specific agreement to pay it.[32]

■ 4. Nowhere, in the present case, has Willys showed Alley's bill to be unreasonable, i. e., the bill is padded or Alley's work was useless. The only attack Willys has made upon Alley's bill has been a contention by defendant that a Delaware statute and a company by-law should control as this is an "indemnification suit"—a conceptualistic approach to the problem which I have rejected. At bottom, as I have repeated, the meat of this case is whether on the contract basis Alley's work was mere duplication and therefore his fee unreasonable. In my recent decision In re North American Light & Power Co., D.C.Del., 101 F.Supp. 931, 936, I set down what I think is the answer to Willys' assertion:

"The services of an attorney—interviewing witnesses, getting evidence, doing research, planning strategy—may be highly complementary, even though 'duplicative'. In my experience at the bar and on the bench, I have observed lawyers of great talent simply sitting at the counsel table and not, apparently, engaging in the combat of litigation, yet obviously their contribution to the matter for determination, whether before an administrative agency or a court, is not without professional significance. And, their contributive worth to the legal drama cannot be ignored or brushed aside by the semantics of such loose words as 'duplicative' and 'unproductive'."

■ 5. My conclusion is Mooney is entitled here to $11,000 plus $586.63 for Alley's expenses.

Plaintiff has made an additional claim for his legal expenses in this action and for interest. I dispose of these claims simply by stating I do not think they have any merit. An appropriate order in conformity with what appears here may be submitted.

### Memorandum and Order on Application for Reargument.

After the filing of the above opinion, defendant Willys moved for reargument. Plaintiff Mooney moved to amend the findings and conclusions or alternatively for reargument.

There is a certain school of judicial lore which holds no opinion is a good one unless both sides are dissatisfied with the result. Adhering to this, I have a reluctance to tinker. Willys' motion, however, raises a point which I think deserves clarification and Mooney's motion raises an issue not previously argued.

■ 1. Willys' motion is grounded first on the theory Mooney in his complaint relied upon the Willys by-law XXIII for recovery and therefore the by-law must be considered by me in determining whether

its terms, before any controversy has arisen as to its meaning, is entitled to great weight. A practical construction placed by the parties upon the instrument is the best evidence of their intention." Rosenberg v. Equitable Trust Co., D.C. Del., 68 F.Supp. 991 at pages 994-995, affirmed 3 Cir., 165 F.2d 786.

See also, Attorney General v. Drummond, 1 Drury & Warren 353, 368, where Lord Chancellor Sugden said: "Tell me what you have done under such a deed, and I will tell you what that deed means."

31. At the hearing in the Krinsky case before Chancellor Harrington on the motion to dismiss on July 27, 1949, Mc-Creery, secretary of Willys, testified at p. 11, as follows:
"Q. It is true, is it not, that the former president of the company, James D. Mooney, has spent considerable time in the defense of the case? A. He has spent many days."

32. Parenthetically may I note Edward L. Love and Charles E. Sorensen, two other directors of Willys, who were named defendants in the Krinsky litigation and who, like Mooney, did not appear therein and were not served, were reimbursed their attorneys' fees by Willys. R. pp. 231-38.

Mooney can recover. Beginning at the sentence starting at the bottom of page 22 of the filed opinion, I said: "I read the May 20, 1949 contract to be Willys' recognition of the [Mooney] claim and a specific agreement to pay it." What I said in effect there was the language of paragraph 7 of the May 20, 1949 contract "in accordance with the provisions of Article XXIII" meant nothing since the contract recognized Mooney was entitled to reimbursement under the by-law and undertook to commit the corporation contractually to make the reimbursement. My view of the case is Mooney can recover on his contract of May 20, 1949 apart from any provision of the by-laws.

Perhaps counsel's confusion stems from the language on page 13 in which I attempted to state what I thought were Mooney's contentions: "The first is reliance upon Paragraph 7 of the May 20, 1949 agreement as a contract determinative of Mooney's right to reimbursement leaving only the question of amount open and that question circumscribed within the term 'reasonable'." And on page 21 I adopted Mooney's interpretation. Now in the May 20, 1949 contract there is no term "reasonable". Yet in the by-law there are the words, " * * * expenses reasonably incurred." Therefore, the logical question occurs, "How can the contract incorporate the by-law limitation as to amount without also incorporating its limitations as to whether the expenses may be reimbursed at all?"

The answer I give to this query is the word "reasonable" I read into the contract as I think Mooney did quite apart from the by-law. In other words, if Mooney had submitted a bill for his legal expenses for $100,000, Willys could rightly object and say, "We agreed to pay your legal expenses but not to write a blank check." This Willys could urge without any reliance on the by-law provision. Furthermore, I think Willys' objection to paying the bill all along until the bringing of this action was clearly along the lines suggested. It thought Mooney's expenses too high. I did not think they were and I set forth my reasons on pages 23–25.

2. Willys makes the further point the by-law provision could not be changed by acts or representations of its officers. My opinion never said the by-lay provision was changed. The by-law provision as I have stated above was unnecessary to Mooney's recovery. What I suggested in footnote 29 was that Willys' officers had acted consistently with Mooney's interpretation of the contract of May 20, 1949 by requesting him to submit a bill for his time and expenses in the Krinsky litigation. For Willys to deny any claim of liability to Mooney yet at the same time to invite him to bill the company does strike me as inconsistent. If the contract contained, as I held it did, Willys' recognition of Mooney's right to reimbursement and engagement to pay Mooney, then Willys' request was a perfectly normal one for Willys to make of Mooney.

For the reasons above stated, Willys' motion for reargument is denied.

3. Mooney has moved to amend Item 4 of the Conclusions of Law for the reason I denied interest to Mooney on his recovery. It is suggested my ruling is contrary to my opinion in Superior Tube Co. v. Delaware Aircraft Industries, Inc., D.C. Del., 60 F.Supp. 573. Mooney seeks interest from September 19, 1949, the thirty-first day following the demand for payment made by plaintiff August 19, 1949.

After Mooney filed his proposed amendment, Willys by letter to the Clerk indicated it desired to be heard on plaintiff's motion since it did not consider Superior Tube as controlling because it thinks Stentor Electric Manufacturing Co. v. Klaxon Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, is dispositive of the issue raised here. Willys' argument is the question of interest is not governed by Delaware law but rather by the law of Ohio where the contract was made.

Since the question of the applicable law to the interest question has now been raised for the first time, I think counsel should have the opportunity to submit briefs and have argument, if the latter is thought necessary, on the following points:

1. What law governs the question of interest here?

2. Is plaintiff entitled to interest under this law?

3. If Delaware law controls and plaintiff is entitled to recover interest, at what rate, from what date and on what amount should the interest be computed?

4. If Ohio law controls and plaintiff is entitled to recover interest, at what rate, from what date and on what amount should the interest be computed?

\*   \*   \*   \*   \*   \*

And Now, July 14, 1952, the defendant's motion for reargument and the plaintiff's motion for reargument on the question of the allowance of interest having been considered, it is

Ordered:

1. Defendant's motion for reargument be and the same hereby is denied.

2. Plaintiff's motion for reargument on the question of interest be and the same hereby is granted in conformity with the above Memorandum.

See also 102 F.Supp. 494.