# ERWIN TOMASH AND ANOTHER v. MIDWEST TECHNICAL DEVELOPMENT CORPORATION AND ANOTHER.

160 N. W. (2d) 273.

July 12, 1968—No. 41,006.

*Rider, Bennett, Egan, Johnson & Arundel* and *Stuart W. Rider, Jr.,* for appellants.

*Maslon, Kaplan, Edelman, Borman, Brand & McNulty, Irving R. Brand,* and *Stephen B. Swartz,* for respondents.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order denying plaintiffs' post-trial alternative motion for amended findings or for a new trial.

Defendant Midwest Technical Development Corporation (hereinafter referred to as Midwest) was incorporated under Minnesota law in October 1958.[1] Its primary purpose is to provide venture capital by investing in securities of companies operating in the technological field which are thought to have a good chance for growth. In November 1958 it was

---

[1] Defendant Midtex, Inc., is successor in interest to Midwest but need not be referred to separately in this opinion.

registered as a closed-end investment company under the Investment Company Act of 1940, 54 Stat. 789, 15 USCA, § 80a-1, et seq.

Plaintiff Willis K. Drake was a charter stockholder and director of Midwest. Plaintiff Erwin Tomash joined the board within a month of its incorporation and became a shareholder shortly thereafter. Both men remained directors until early 1962.

During their tenure as directors, plaintiffs made personal investments in some of the stocks held in Midwest portfolios. To briefly recite a few, within a year of the time that Midwest purchased stock and a $75,000 debenture from Electro-Logic Corporation, a company then in its formative stage, plaintiffs, together with other Midwest directors, bought shares in the same company. Subsequently Midwest loaned Electro-Logic $35,000 and guaranteed its notes for another $50,000. In May 1960, Midwest authorized investment of $60,000 in the common stock and $100,000 in a convertible note of Electro-Nuclear Systems Corporation. It purchased this stock on June 16 and the note on August 4, 1960. Meanwhile, from June to September plaintiffs, again with other Midwest directors, personally purchased $70,000 worth of Electro-Nuclear stock. Most of the directors sold their Electro-Nuclear stock in 1960 and early 1961, for an aggregate profit of $144,000. As of May 1, 1962, Midwest still held its stock in this corporation. Plaintiffs and other directors of Midwest acquired stock in Telex, Inc., in 1959, prior to the acquisition of stock by Midwest. Subsequently many of the individuals' shares were sold, plaintiff Drake making a profit of $245,026.50, and plaintiff Tomash, $108,096.95. During the time the stock was sold, Midwest retained most of its Telex shares, although it did dispose of a few shares.

These are only a few examples of the actions of plaintiffs in dealing in portfolio stocks held by Midwest. There was no attempt to conceal the directors' dealings in portfolio assets and the attorney for Midwest knew the directors were dealing in these portfolio stocks and advised them that what they were doing was not a violation of the Investment Company Act of 1940.

In 1959 Midwest's board of directors adopted a statement of policy reading:

"Any Director who influences the market price or value of a security held by, or under consideration for purchase by the Corporation by his own act of selling, buying, offering to sell, offering to buy, or by any equivalent act shall be requested to immediately resign from the Board of Directors. In particular, no Officer or Director should purchase any securities under discussion where there is a limited market until such time as the requirements of the corporation have been fully satisfied. The facts of any such instance shall be reviewed and judged by a quorum of the Board of Directors at the request of any officer of the Corporation."

When Midwest registered securities for a public issue in 1960, the attorney for Midwest disclosed the directors' holdings to the Securities and Exchange Commission (hereinafter called SEC), and that information appeared on the prospectus offering the stock for sale. However, plaintiffs failed to secure the approval of SEC to deal in the portfolio stocks held by Midwest, and in 1962 SEC brought an action against plaintiffs, charging them with "gross abuse of trust and gross misconduct because they had placed themselves in positions of conflicting interests whereby they made decisions 'with other than disinterested motives'" and also with a violation of § 17(d) of the Investment Company Act and Rule 17d-1 issued pursuant to it. Section 17(d) makes it unlawful for any affiliated person of a registered investment company to participate in any arrangement or joint enterprise with that company unless such participation has been approved by SEC.

This action came on for trial in Federal court before the Honorable Gunnar H. Nordbye. He issued a memorandum decision on July 5, 1963, in which he found that the evidence did not sustain a finding that the directors had been guilty of gross misconduct or gross abuse of trust, but, after noting that their practice had placed them in a "continual danger of conflict of interests," he held that they had violated § 17(d) of the Investment Company Act of 1940.[2] In his final decree, issued December 13, 1963, Judge Nordbye enjoined them from engaging in a joint

---

[2] The memorandum decision of Judge Nordbye may be found in CCH, Federal Securities Law Reporter, 1961–1964 Decisions, par. 91,252.

enterprise or arrangement with Midwest unless they received prior approval from SEC.

While it is true that the injunction granted by Judge Nordbye did not apply to the plaintiffs in this case, that was due to the fact that both had, by that time, ceased to be directors of the company.

The present action was brought by plaintiffs to recover indemnity for their expenses incurred in defending the action brought by SEC. At a meeting held on April 13, 1964, the board of directors referred the matter to the law firm of Best, Flanagan, Lewis, Simonet and Bellows for an opinion, and it advised that plaintiffs were not entitled to indemnification as a matter of right. The board of directors thereafter denied plaintiffs indemnification and this suit was brought on the ground that the board had acted arbitrarily and capriciously and that plaintiffs were entitled to indemnification as a matter of right.

Plaintiffs rely mainly on the case of In re Dissolution of E. C. Warner Co. 232 Minn. 207, 45 N. W. (2d) 388. There a stockholder objected to an order entered in voluntary dissolution proceedings directing the receiver of the corporation to pay attorneys' fees incurred by a director in defending a derivative suit brought by a minority stockholder. We held that where a derivative suit is brought by a minority stockholder against the officers or directors of a corporation they are entitled to indemnification of their defense expenses if they are vindicated in that action. The facts in the Warner case and those now before us are clearly distinguishable. In the first place, the action in which the expenses were incurred was a derivative suit by a minority stockholder against the corporation as nominal defendant and one A. E. Wilson, who was president and treasurer of the corporation as well as a director. Warner v. E. C. Warner Co. 226 Minn. 565, 33 N. W. (2d) 721. The derivative action had been brought for the benefit of the corporation and, even though the corporation was named as a party-defendant, we held in the later action (232 Minn. 210, 45 N. W. [2d] 391) that "such action by a minority stockholder is essentially for the benefit of the corporation, and in that beneficiary sense the corporation, although standing as a neutral *pendente lite,* is the true plaintiff," citing Meyers v. Smith, 190 Minn. 157, 251 N. W. 20, and other authorities. Furthermore, Wilson was com-

pletely vindicated in the derivative suit. Warner v. E. C. Warner Co. *supra*. The basis for the holding in the later case that he was entitled to indemnification is summed up in these words (232 Minn. 215, 45 N. W. [2d] 393):

"* * * [I]rrespective of any showing of direct or tangible benefit to the corporation, a corporate director, *after he has been vindicated on the merits* in a shareholder's derivative suit charging him with dereliction of duty, is entitled to be repaid his reasonable expenses out of corporate funds. Undoubtedly, a vindication of the integrity of the corporate management is in a certain general sense beneficial to the corporation from the standpoint of preserving the confidence of its creditors and of its prospective investors, as well as in the maintenance of the morale of its employes and stockholders, but such a general benefit is not the foundation of the right of recovery. A general benefit of this nature is but an incident of sound corporate management."

In the case now before us it cannot be said that the officers and directors were completely vindicated by the decision of the Federal court referred to above. While Judge Nordbye did hold that the proof was insufficient to find the directors guilty of gross abuse of trust, he granted injunctive relief to restrain them from some of the alleged violations of the Investment Company Act. Among other things, he said:

"* * * [A]djudication of gross abuse of trust must be based upon evidence that a director is so untrustworthy that he should not be permitted to act in that capacity for any other company. The Court would not be justified in painting these directors with a broad brush of malfeasance and stigmatize them with a finding of gross misconduct and gross abuse of trust. In the launching of new electronic companies in 1960 and 1961, some of these directors, if not all, may have failed to recognize their inherent responsibilities as directors of an investment company, and therefore unwittingly placed themselves in situations which should have had approval of the Commission."

In the case of McMenomy v. Ryden, 276 Minn. 55, 148 N. W. (2d) 804, we held that the decision of the Federal court was not res judicata so as to bar a stockholder's action against the officers of Midwest for

violation of their duties as corporate officers under the tests for determining the officers' liability applied in the state court. We held that the parties were not the same, nor were the tests for determining liability the same in the two actions.

Originally Midwest had adopted a bylaw relating to directors or officers which apparently made indemnification mandatory. Upon demand of SEC this bylaw was amended by substitution of the word "may" for "shall" and as so amended reads in part:

"Indemnification of Directors and Officers and Members of Advisory Board

"Each director, officer and member of the Board of Advisors, whether or not then in office, (and his heirs, executors, and administrators) may be indemnified by the Corporation against reasonable costs and expenses incurred by him in connection with any action, suit or proceeding to which he may be made a party by reason of his being or having been a director, officer or member of the Advisory Board of the corporation, except in relation to any actions, suits, or proceedings in which he has been adjudged liable because of willful misfeasance, bad faith, gross negligence or reckless disregard of the duties involved in the conduct of his office. In the absence of an adjudication which expressly absolves the director, officer or member of the Advisory Board of liability to the Corporation or its stockholders for willful misfeasance, bad faith, gross negligence and reckless disregard of the duties involved in the conduct of his office, or, in the event of a settlement, each director, officer and member of the Advisory Board (and his heirs, executors and administrators) may be indemnified by the Corporation against payments made, including reasonable costs and expenses, provided that such indemnity shall be conditional upon the prior determination by a resolution of two-thirds of those members of the Board of Directors of the Corporation who are not involved in the action, suit or proceeding that the director, officer or member of the Advisory Board has no liability by reason of willful misfeasance, bad faith, gross negligence or reckless disregard of the duties involved in the conduct of his office, and provided further that if a majority of the members of the Board of Directors of the Corporation

are involved in the action, suit or proceeding, such determination shall have been made by a written opinion of independent counsel."

Significantly, the legislature, after In re Dissolution of E. C. Warner Co. *supra,* was decided, enacted L. 1951, c. 98, § 2, now Minn. St. 301.09(7), which provides that every corporation shall have power:

"To indemnify each director or officer or former director or officer against all expenses, including attorneys' fees, but excluding amounts paid pursuant to a judgment or settlement agreement, reasonably incurred by him in connection with or arising out of any action, suit or proceeding to which he is a party, by reason of being or having been a director or officer of the corporation, except with respect to matters as to which he shall be finally adjudged in such action, suit or proceeding to be liable for negligence or misconduct in the performance of his duties. Such indemnification shall not be exclusive of any other rights to which he may be entitled under any bylaw, agreement, vote of stockholders or otherwise."

Even assuming that the bylaw of the corporation is consistent with the statute, it is obvious that both speak in terms permissive rather than mandatory. Inasmuch as Warner does not compel indemnification under the circumstances of this case, and the bylaw and statute permit but do not require indemnification, there is no absolute right to it here, and the action of the board of directors under the circumstances of this case in denying indemnification was clearly justified.

It should be noted that the Warner case, as well as the corporate bylaw and the statute, speak in terms of indemnification to one who defends himself as a director or officer of the corporation. That is not true of the SEC case. There, the officers and directors were defending themselves from alleged violations of the Investment Company Act, from which they personally profited. The two are not the same.

The trial court, in addition to finding that the directors were not absolved or vindicated of all the charges brought in the action by SEC, found that the actions of these directors were negligent and amounted to misconduct in the performance of their duties as directors. That finding was unnecessary to the result reached and we do not pass upon it

here. It is enough to hold that, inasmuch as the directors were not vindicated of all misconduct by the decision of the Federal court, the board of directors was not required to grant indemnification even if In re Dissolution of E. C. Warner Co. *supra,* still controls in the area covered by the facts of that case after the passage of § 301.09(7). Thus, the decision of the trial court must be affirmed.

Affirmed.